## CRAWFORD v. UNITED STATES.

(District Court, N. D. Ohio, E. D. July 3, 1923.)

No. 11361.

1. **Army and navy ⚙═51½, New, vol. 12A Key-No. Series—Right to deduct from "pay" held not to authorize deduction from retainer pay to meet insurance premiums of members of naval reserve released from active service; "allowance."**

A provision in an application for insurance under War Risk Insurance Act Oct. 6, 1917 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 514a et seq.), authorizing "necessary monthly deductions from my pay, or if insufficient from any deposit with the United States in payment of premiums," under section 22, providing that "the term 'pay' means the pay for service in the United States according to the grade and length of service excluding all allowances," and under the rules of the War Risk Bureau as to the insurance contract, as authorized by sections 13 and 402, that premiums shall be paid monthly and, unless insured elects otherwise in writing, be deducted from any pay due him, or any deposit made by him, in view of the fact that this insurance was available only to men in active service, and of the practical construction of the act by the departments, authorized deductions only from pay accruing from active service, or from deposits deducted monthly in default of adequate allotment from active service pay, provided by sections 202, 203, and did not authorize deduction from the "retainer pay" of men in the naval reserve which was an "allowance" for readiness to serve excluded by section 22, and hence the policy of an honorably discharged member of the naval reserve who had been released from active service, but had not paid the premiums after such release, terminated, although the government still owed him installments of retainer pay.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Allowance; Pay.]

2. **Army and navy ⚙═51½, New, vol. 12A Key-No. Series—Evidence held to show insured's intent to terminate war risk policy.**

In an action on a war risk policy, evidence *held* to show insured's intent to end his insurance with the termination of his active service in the navy, and that there was no special equity in his favor to have the policy continued.

At Law. Action by Florence N. Crawford against the United States. Judgment for defendant.

---

Dustin, McKeehan, Merrick, Arter & Stewart, of Cleveland, Ohio, for plaintiff.

Edw. H. Horton, of Washington, D. C., for the United States.

WESTENHAVER, District Judge. [1] This action is brought by plaintiff as beneficiary of Collins George Nadolleck on a certificate of insurance issued to him pursuant to the provisions of the War Risk Insurance Act of October 6, 1917 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 514a et seq.). The case turns on the question of whether or not this policy was in force at the time of the insured's death, and involves the meaning of the word "pay" as used in that act, the regulations issued by the Director of the War Risk Insurance Bureau pursuant thereto, and in the certificate of insurance. It is the government's contention that the term "pay," thus used, means the usual monthly pay for active duty service, and of the defendant that it means and includes "retainer pay," so called, payable to members of the United States Naval Reserve.

Collins George Nadolleck, the insured, enlisted as a United States naval volunteer April 6, 1917, for a term of three years. On December 6, 1917, he made application for a $5,000 insurance certificate naming the plaintiff as his beneficiary, and a certificate for that amount was duly issued. In his application he authorized "the necessary monthly deduction from my pay, or, if insufficient, from any deposit with the United States in payment of premiums, unless they be otherwise paid." It further provides that the application is deemed made as of the date of his signature "with premiums commencing from that date and payable at the end of each calendar month." He was then on active service, earning the pay provided by law for his rank and class, which was payable monthly. On July 1, 1918, by operation of law, he became also a member of the United States Naval Reserve, and as a member thereof, he became entitled thereafter to a certain pay or allowance, called "retainer pay," the amount of which was determined by his rank and class in the active service. On September 30, 1919, he was released from active service, remaining, however, a member of the naval reserve until the end of his three-year term. When thus released, he was fully paid all his active service pay, including a $60 bonus allowed alike to all members of the military and naval forces when discharged or placed on inactive duty. He was also given a copy of war risk insurance form 2303, containing information relative to the continuance in force of his War Risk Insurance. He was honorably discharged from the naval reserve April 6, 1920, and met his death by drowning July 10, 1920, without having made any payments of premiums after his release from active service. At the date of such release and continuously thereafter until his death, the government was in arrears to him on account of retainer pay in a sum sufficient to pay these premiums, and it is the contention of plaintiff that the War Risk Insurance Act and the terms and conditions of the insurance certificate authorized and required these premiums to be deducted therefrom, and that the legal effect is the same as if they had been so deducted.

The decision of this contention turns on the construction of cer-

tain sections of the War Risk Insurance Act, the terms and conditions of the certificate of insurance, and the lawful regulations pertaining thereto made by the Director of the Bureau of War Risk Insurance. Section 22 of the War Risk Insurance Act says:

"The term 'pay' means the pay for service in the United States according to the grade and length of service, excluding all allowances."

Section 13 of the act empowers the Director, subject to the general direction of the Secretary of the Treasury, to make rules and regulations not inconsistent with the provisions of the act, necessary or appropriate to carry out its purposes. It also provides that the Director shall decide all questions arising under the act, except as otherwise provided in sections 5 and 405. Section 402 requires him to determine upon and publish the full and exact terms and conditions of the contract of insurance. Pursuant thereto, bulletin No. 1 was published October 15, 1917, fixing the terms and conditions of the certificate. This bulletin declares that premiums shall be payable monthly on or before the last day of each calendar month. This is the purport also of section 404. The bulletin further provides that unless the insured otherwise elects in writing, premiums will be deducted from any pay due him from the United States or deposit by him with the United States; also, if so to be deducted, a premium when due will be treated as paid, whether or not such deduction is in fact made, if upon the due date the United States owes him on account of pay or deposit an amount sufficient to provide the premium. A 31-day period of grace after the expiration of each month is allowed during which the insurance shall remain in force. It is finally provided that if the premium is not paid either in cash or by deduction when due or within the days of grace, it shall immediately terminate. All of these terms and conditions were carried into the insured's application and the certificate issued to him. No question is or can be made that the terms and conditions thus fixed were consistent with the act and within the power of the Director.

The court should place itself in the situation of the parties when the act was passed and when those terms and conditions were settled and the certificate issued. Our duty primarily is to ascertain the intent of Congress and of the Director of the War Risk Insurance Bureau. This insurance was available only to men then in active service and not to members of the United States Naval Reserve on inactive service. The privilege of keeping the insurance in force after discharge from active service and converting it into ordinary life insurance was accorded only to men who had been in the active service. The privilege of taking this insurance was not accorded to men in the United States Naval Reserve, nor as an incident to enrollment in that service. What Congress intended to provide for and insure against were the war risks of active service in the military and naval forces of the United States. Naturally the language used must be construed in view of this general purpose and in connection with the risks and hazards of active military or naval duty.

Consequently when the Director of the War Risk Insurance Bureau, acting pursuant to the power conferred by section 402, determined and

published the full and exact terms of the insurance contract and provided that premiums should be paid monthly and would, unless the insured elected otherwise in writing, be deducted from any pay due him from the United States or any deposit made by him with the United States, he must have had in mind the usual pay accruing monthly for active service. He must also, in referring to the deposit by the insured with the United States, have had in mind only the deposits created by sections 202 and 203 of the act. Section 202 authorized the enlisted man to allot certain portions of his monthly pay. Section 203 requires that, in case one-half of an enlisted man's monthly pay is not allotted, regulations to be made by the Secretary of War and Secretary of the Navy, respectively, may require that any portion of such half as is not allotted shall be deposited to his credit, to be held during such period of his service as may be prescribed. This deposit is evidently the deposit referred to in bulletin No. 1 and in the insured's application and insurance certificate. No allotment could be required of any part of the so-called retainer pay, nor kept as a deposit. Obviously, therefore, it would seem that both the monthly payment of premiums or the monthly deduction of premiums were to be made from the monthly pay for active service or from the deposit deducted monthly in default of an adequate allotment from active service pay.

No pay was or could be earned by an enlisted man payable monthly except as active service pay. No deposit was or could be made by him with the United States except from that part of his active service pay subject to allotment and not allotted. The so-called retainer pay of men in the naval reserve was not payable monthly nor required to be allotted or deposited in default of allotment. Congress provided that—

"Retainer pay shall be paid annually or at shorter intervals as the Secretary of the Navy in his discretion may direct."

In point of fact, the Secretary of the Navy, by regulations in force October 30, 1917, and thereafter, provided that retainer pay should be paid quarterly on the 15th day of the month following the end of the quarter of each fiscal year. Moreover, the insured did not actually become a member of the naval reserve nor entitled to this retainer pay until July 1, 1918. The navy regulations then in force defined "retainer pay" as a bonus allowed to all members of the naval reserve force in addition to any pay for active duty performed; and also that it might be stopped on the order of the reservist's commanding officer for failure to keep him informed of his address or to make required reports, and that no allotments should be made therefrom. Rules and regulations made and issued by the Director of the Bureau of War Risk Insurance under date of December 12, 1917, define pay in the navy as not including retainer pay.

In view of these considerations, it cannot be said that "pay," as used in the War Risk Insurance Act or by the Director in fixing the terms and conditions of the insurance contract, contemplated or included any other pay than the usual monthly pay for services actually rendered. On the contrary, it must be held that retainer pay is to be regarded, not as pay for services rendered, but as an "allowance" for

readiness to render service if called on, which, by section 22 of the act, was expressly excluded from the term "pay."

Such being the terms of the law and of the written contract, it becomes unnecessary to examine closely the subsequent rules and regulations or decisions of the Director of War Risk Insurance Bureau or to determine whether they do in fact modify or attempt to modify the terms and conditions of the insurance certificate or of bulletin No. 1 fixing those terms and conditions, or if they do so modify them adversely to the insured's right, whether they are or not in excess of the power conferred by section 13 to make rules and regulations and decide all questions arising under the act. If these rules, regulations, and decisions mean what they say and are to be regarded as binding on the insured, then retainer pay must be regarded as an allowance and not as pay for service rendered, nor within the act or the certificate. However, even if they are not to be regarded as having this effect, they must in any event have the force of a practical contemporaneous construction of a law by officers charged with its administration. The practical construction of the law, not only by the War Risk Insurance Bureau but by the Treasury, War, and Navy Departments, as evidenced by these rules and regulations or decisions, is and has been that retainer pay is a bonus or allowance extended for readiness to serve if called on, rather than pay for service rendered, and that the active service pay earned and payable monthly is the only pay subject to allotment or deposit or from which monthly payments of premiums were to be deducted. This contemporaneous practical construction of the law is not to be disregarded or overthrown except for cogent reasons, and none such are apparent to me.

[2] Nor can there be said to exist in this case any special equity in the insured's favor. When released from active service and fully paid for all service rendered, including a $60 bonus, he was given, as has been said, a written notice, war risk insurance form 2303. This notice advised him that his pay account had been checked to that date, and that after his discharge from the service when his government pay ceased, he should send his insurance premiums by check or money order to the Treasurer of the United States promptly on the 1st of each month, otherwise his insurance would become void. He was strongly urged so to do. His insurance certificate, as well as the rules and regulations, expressly provided that it would become void or lapse in the event premiums were not paid monthly. Obviously this notice treats his release from active service as the equivalent of a discharge from the service and a cessation of his government pay. It is a strained construction to assert that the insured was misled by it into believing that its urgent admonitions related, not to his present release from active service, but to his formal discharge some months later from the naval reserve. Be this as it may, he was in fact discharged April 6, 1920, and never at any time acted upon this notice, even to the extent of making an inquiry. In the meantime he had received and cashed retainer pay checks which, in view of the circumstances under which they were tendered, he must have understood were intended as payments in full without any deduction for insur-

ance premiums. That he had then and at the time of his death a credit with the government due to inaccuracies in computing his retainer pay was certainly not known to him, and it is an inadmissible assumption that he relied thereon as a means of keeping alive his insurance. His evident intention was to end his insurance with the termination of his active service in the navy.

The foregoing summarizes the considerations which control this case. Due consideration has been given to all of the arguments advanced on behalf of plaintiff, even if not specially reviewed. It results that judgment must be rendered in defendant's favor. Plaintiff's petition is dismissed, at her costs.