### MORTEK v. UNITED STATES.

(District Court, E. D. Illinois. April 2, 1924.)

#### No. 1815.

Army and navy ⊜⟹51½, New, vol. 12A Key-No. Series—War risk policy does not lapse, so long as government has service pay sufficient to pay premiums.

Under the provision of the application for war risk insurance, authorizing deductions from applicant's pay as soldier, or from any deposit with the United States, for premiums, and the regulations of the Director of the Bureau of War Risk Insurance, the policy could not lapse so long as the government owed to the soldier, as service pay, an amount sufficient to pay the premiums as they became due, regardless of whether the soldier at the time of his death was discharged from service.

At Law. Action by Rosa Mortek against the United States. Findings for plaintiff, with leave to move for entry of judgment.

June C. Smith, of Centralia, Ill., for plaintiff.
W. O. Potter, U. S. Atty., of Marion, Ill.

ENGLISH, District Judge. This is a suit brought by Rosa Mortek against the United States to recover on two war risk insurance policies issued to John Frank Musial. The suit is brought under section 405 of the War Risk Insurance Act (Comp. St. Ann. Supp. 1919, § 514vvv).

The practice in cases of this kind is governed by the Tucker Act (24 Stat. 505), which makes it the duty of the court to cause a written opinion to be filed in the cause, setting forth the specific findings of the

court of the facts therein, and the conclusions of the court upon all questions of law involved in the case, and to render judgment thereon. In compliance with the provisions of this act, the following findings and conclusions are stated:

### Finding of Facts.

I. On April 29, 1918, John Frank Musial was inducted into the service of the United States as a private in the army. His parents were dead and he was unmarried. The plaintiff, Rosa Mortek, is his sister and next of kin.

II. On May 6, 1918, war risk insurance policy No. 2094571 in the sum of $5,000, and on July 6, 1918, war risk insurance policy No. 4677503 in the sum of $5,000, were issued and delivered to the soldier. These policies were later delivered by the soldier to the plaintiff. The premiums on these policies were $3.25 per month on each.

III. In each of the written applications for insurance on which the above policies were issued is found in the following language, viz:

"I authorize the necessary monthly deductions from my pay, or, if insufficient, from any deposit with the United States, in payment of the premiums as they become due, unless they be otherwise paid."

IV. The premiums on the above policies, including the premiums due on January 31, 1919, were actually deducted by the government from the soldier's pay, as such premiums became due.

V. After the soldier was inducted into the service, he was given army serial No. 2417448. He was sent overseas, and was returned to the United States, arriving at Newport News, Va., on February 11, 1919.

VI. The soldier was later sent to Camp Grant, at Rockford, Ill., as a casual, attached to the Third Company Discharge Unit. He reached Camp Grant about February 17, 1919.

VII. By special order No. 51, issued from the headquarters at Camp Grant, Ill., Musial, with others, was ordered to be discharged on February 24, 1919; in accordance with this special order. The pay roll was made up, showing that there was due to Musial on February 24, 1919, $25.10 for service pay and $11.65 travel pay from Camp Grant, Ill., to the point of his enlistment. It is conceded by the government that neither the above service pay nor travel pay, or any part thereof, was ever paid, and that the same is still retained by the government.

VIII. The pay roll was signed by the soldier, but it is noted on the face of the pay roll that he was not paid. Lieut. Edelestine, who made up and had charge of the pay roll, and made the notation thereon that Musial was "not paid," was called as a witness for the government. He identified the pay roll and the notation thereon in his handwriting, and testified that Musial was not paid either the service or travel pay.

IX. The sick report of the Third Company Discharge Unit at Camp Grant, Ill., shows that on February 28, 1919, the soldier was carried on the sick report of the company officer. No other record was offered in evidence relating to the discharge of John Frank Musial, and as far as the records in this case show this sick report is the last record the government has of him.

X. On April 17, 1919, the body of Musial was found in a vacant cottage near Camp Grant. There was unmistakable evidence that he had committed suicide by taking carbolic acid. He was dressed in new civilian clothes, most of which bore the tags and cost marks of a Rockford clothing store. The metal tags furnished to him by the government when overseas, and bearing his army serial number, were fastened on a string and laid across his hat, on a chair near the cot on which his dead body was found. The body was later identified by the friends and relatives of the soldier.

XI. Later Mr. House, an attorney of Nashville, Ill., and a friend of the soldier, in company with Martin McAllister, coroner of Winnebago county, went to the hospital at Camp Grant to investigate the records concerning the deceased soldier. They both testified in the case, the former in person and the latter by deposition. They both identified plaintiff's Exhibit 15 as a true copy of the hospital record shown to them at the Camp Hospital, which copy was made by Mr. House in the presence of McAllister at the time they were there. This exhibit is as follows:

"Musial, John F.
"May 2, 1919, to Com. Gen. Camp Grant, Ill. Disposition of John F. Musial, No. 2417448, who arrived at Newport News, Va., Feb. 11, 1919, on U. S. S. Princess Matorka, and for's to Camp Grant, Feb. 17, 1919.
                              "James N. Peals,  Adjutant General.
    "Synopsis: Musial, John F. No. 2417448. To Adj. Gen., Wash., D. C., May 12—19. Dis. at Camp Grant Feb. 20—19, and emergency address, Mrs. Rosa Mortek, (sister) R. F. D. No. 3, Ashley, Ill. Soldier foreign service and pay roll signed by soldier, paid. Notation, appears 'Not Paid'; Hosp.
          "[Signed]  W. A. Holbrock, Maj. Gen. U. S. A. Commanding,
              "By Holden Olin, Col of Inf. U. S. A., Executive Officer."

XII. The government did not produce the records of the hospital at Camp Grant at the trial. It was stated by counsel, at the hearing, that these records were stored in Washington and had not been unpacked, for the reason that no appropriation had been made by Congress for that purpose.

The above facts are not controverted.

### Facts and Contentions in Controversy.

There is only one question of fact in controversy between the parties. That question is whether or not John Frank Musial was in fact discharged from the army on or about February 24, 1919. The government contends that the soldier was discharged from the service, either actually or constructively on February 24, 1919; that the premiums on his policies due on the last day of February, 1919, were not paid, and that the policies both lapsed at the expiration of the 31-day grace period following the date the premiums were due; that hence the policies lapsed on March 31, 1919, and were not in force at the date of the soldier's death.

The plaintiff, of course, contends that the soldier was never discharged from the service, and for that reason the policies could not lapse so long as the soldier was in the service and earning service pay monthly, available for the payment of the premiums.

The plaintiff further contends that the question of whether or not the soldier was discharged from the army is not material, for the reason. that there was due him for service pay on February 24, 1919, the sum of $25.10, which the government still retains, which the plaintiff contends was available for the payment of premiums, even though the soldier was discharged from the service, and that the policies could not lapse so long as the government owed the soldier service pay in an amount sufficient to pay the premiums as they became due.

With this contention I am bound to agree, for reasons expressed below in finding 14. There is no controversy but what the amount of service pay due the soldier February 24, 1919, was sufficient to pay the premiums on both policies up to the soldier's death, and beyond, if such pay could be applied to the payment of the premiums.

XIII. It is unnecessary for me to make any findings on the issue of whether or not John Frank Musial was discharged from the army on February 24, 1919, or at any other time, for the reason that my findings on the other issues make the question of his discharge from the army immaterial to the decision of this case.

XIV. I find that on February 24, 1919 there was due to the soldier from the government the sum of $25.10 for service pay. I further find that said sum was sufficient to pay the premiums on the two policies here involved, up to the death of the soldier on April 17, 1919. I further find that under the authority contained in the written application for these policies, and under the regulations promulgated by the Director of the Bureau of War Risk Insurance, and which was expressly made a part of the contract of insurance, evidenced by the policies issued, this service pay due to the soldier, and not paid to him, by the government, was available for the payment of the premiums, even though he was discharged from the service, as contended by the government.

I further find that the policies here involved could not lapse so long as the government owed to the soldier, as service pay, an amount sufficient to pay the premiums as they became due, and according to the plain language of the regulations, which are a part of the contract, the government must deduct the amount of the premiums from any pay due the soldier from the government, whether the soldier is still in the service or has been discharged therefrom, and that such premiums, when due, must be treated as paid, whether or not such deduction is in fact made, if upon the date the premiums are due the government owes to the soldier an amount sufficient to provide the premiums.

XV. I further find from the photostat copies of government records offered in evidence, "Plaintiff's Exhibit 9," that two additional policies were issued to John Frank Musial, being Nos. 2743549 and 4675769. Policy No. 2743549 was actually delivered to the plaintiff, the beneficiary therein, and was returned to the department by her on August 14, 1919. It is conceded that policies Nos. 2743549 and 4675769 were issued in error, as the soldier already had the maximum amount of insurance allowed, in the two policies on which this suit is based.

The Assistant Director of the Insurance Risk Division in the Bureau of War Risk Insurance, certifies in plaintiff's Exhibit 9 that premiums

were deducted from the soldier's pay for the payment of premiums on policy No. 2743549, at the rate of $3.25 per month, beginning with July, 1918. He does not show in the exhibit how long the premiums on this policy were deducted from the soldier's pay. He further certifies in the same exhibit that the premiums on policy No. 4675769, at the rate of $3.35 per month, were deducted from the soldier's pay from May, 1918, to February 24, 1919.

It is conceded by both the plaintiff and the government that policies No. 2743549 and 4675769 were issued in error, and no claim for recovery thereon is made. The plaintiff contends, however, that the government erroneously deducted from the pay due the soldier premiums on these two policies from May and July, 1918, to February, 1919, and that these payments should be applied to the payment of premiums on the policies, which are the subject of this suit. The effect of this would be to satisfy the premiums for nine months from February, 1919, on the two policies herein involved.

In answer to this, the government contends that the applications on which said two additional policies were erroneously issued, shown in plaintiff's Exhibit 9, are merely duplicates of the applications on which the policies here involved were issued, and that no policies were ever issued on such duplicate applications, and no premiums on policies of corresponding numbers were ever deducted from the soldier's pay.

In view of my finding that the pay due the soldier on February 24, 1919, was available for the payment of premiums on the two policies on which this suit is based, without regard to whether he was or was not discharged from the service, I find it unnecessary to make any finding with reference to premium deductions mentioned in plaintiff's Exhibit No. 9.

### Ultimate Findings and Conclusions of Law.

I. I find that policies Nos. 2094571 and 4677503, each in the sum of $5,000, were duly issued and delivered to Private John Frank Musial; that John Frank Musial died on or about April 17, 1919; that said policies were in full force and effect at the time of the death of the soldier, and had not lapsed on account of nonpayment of premiums or other causes.

II. I further find that the plaintiff, Rosa Mortek, is the sister of John Frank Musial, and is the beneficiary named in each of said policies; that after the death of the said soldier she furnished to the government due proof of death of said soldier, and is entitled to recover the proceeds of said policies, to be paid in the manner provided in the War Risk Insurance Act and the regulations made thereunder.

III. I further find that the government had, prior to the bringing of this suit, been requested, but had declined and refused, to pay said policies. I further find that on account of the refusal of the government to pay said policies a disagreement has arisen within the meaning of section 405 of the War Risk Insurance Act, on account of which disagreement this suit was properly brought and can be maintained in this court by the plaintiff.

IV. I further find that due service has been had on the government in this suit in accordance with the provision of the Tucker Act.

V. I further find that under the law the government is required to pay and the plaintiff is entitled to recover the face of each of said policies, payable in monthly installments of $28.75 on each policy, according to the statute and the regulations lawfully made thereunder.

VI. I further find that the first installments were due on said policies on May 17, 1919, and that on March 17, 1924, 58 like installments were past due, on each policy, and unpaid; that the aggregate amount of the installments due up to March 17, 1924, is $3,335.

VII. I further find and fix the reasonable attorney fees due from the plaintiff to June C. Smith, her attorney, for his services in this case, are the sum of $500, pursuant to section 13 of the War Risk Insurance Act, as amended May 20, 1918 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 514kk), which attorney fees should be paid to him direct by the government out of the installments already due the plaintiff on said policies.

Counsel for the government stated on the trial that, in case the findings were against the government and the government did not desire to appeal therefrom, if no judgment was entered, the department would probably treat the findings as establishing the right of the plaintiff to recover on the policies, and would allow and pay the claim in the regular way, without a judgment being entered.

In view of this suggestion, no judgment will be entered at this time, but counsel is given leave to move for judgment, in such form as may be proper, at any time.