## O'NEILL v. UNITED STATES.

District Court, D. Massachusetts. April 16, 1929.

No. 3250.

Robert C. McKay, of Boston, Mass., for plaintiff.

Frederick H. Tarr, U. S. Atty., and John J. Walsh, Jr., Asst. U. S. Atty., both of Boston, Mass.

BREWSTER, District Judge. This is a petition brought by the beneficiary named in the application for war risk insurance, issued to James Timothy O'Neill, now deceased. The sole question presented is whether, at the time of the death of the insured, the insurance was in force.

I find the following facts:

1. The petitioner is the father of James Timothy O'Neill, who enlisted in the military service of the United States on June 30, 1917, and is the beneficiary named in the certificate of insurance, hereinafter referred to.

2. Said O'Neill, while in such service, duly applied for insurance with the Bureau of War Risk Insurance of the Treasury Department in the amount of $10,000.

3. On November 7, 1917, a certificate of insurance numbered 30153 was issued to James Timothy O'Neill under the authority of the Acts of Congress of September 2, 1914, 38 Stat. 711, and of October 6, 1917, 40 Stat. 398. Said insurance was granted "subject to the payment of premiums," and was also subject to all regulations promulgated under said acts then, or thereafter, in force, "all of which, together with the application for this insurance, and the terms and conditions published under authority of the Act," constituted the contract.

4. The application for insurance contained the following provisions with reference to payment of premium:

"I authorize the necessary monthly deductions from my pay, or if insufficient, from any deposit with the United States, in payment of the premiums as they become due, unless they be otherwise paid."

5. The said O'Neill was honorably discharged from military service on August 14, 1919, and on the 15th day of August, 1919, he re-enlisted.

6. The said O'Neill was again honorably discharged from military service on October 4, 1920, and on the 5th day of October, 1920, he again re-enlisted.

7. James Timothy O'Neill died March 21, 1921, while in the military service of the United States.

8. During the period from November 7, 1917, to the date of the last re-enlistment, monthly premiums of $6.50 each were deducted, the last deduction covering the installment of premium due for the month of September, 1920.

Subsequent to the re-enlistment of October 5, 1920, no deductions were made.

9. The soldier did not revoke the authority contained in his application, or in any way indicate to the government or to the military authorities his election to pay the premiums in any other manner than by deductions from pay, or that he desired to let his insurance lapse. Following his last re-enlistment he received his pay monthly, in full, without any deductions for the monthly installments of premiums. He signed the pay roll each month, but the amounts received varied, and, unless he made a careful examination of the pay roll, he would have had no reason to believe that the deductions were not being made as theretofore. I do not find that he had actual knowledge that the premiums were not being deducted.

10. At the time of his first re-enlistment, in August, 1919, there appears to have been forwarded from the headquarters of the American forces in Germany to the Administrative Bureau in Washington, having charge of the war risk insurance, a memorandum upon the subject "Continuance of War Risk Insurance of Recruit." This memorandum gave his name, serial number, date of discharge, date of re-enlistment, and other information, but was not signed by O'Neill.

At the time of the second re-enlistment no such record seems to have been transmitted.

It was in evidence that the Bureau of War Risk Insurance had adopted form 758, revised to February, 1920, which was to be

used after re-enlistment into active service, and only for the purpose of renewing previous authorization of deduction from pay for yearly renewable term insurance. This form calls for the signature of the soldier, and in it he expresses a desire that the insurance be continued for a specified amount, and renews his authorization to deduct. Whether the soldier was required by any regulation to sign a form of similar purport at the time of the first re-enlistment does not appear, and the government failed to produce any such document, if one was signed.

11. Bulletin No. 1, issued pursuant to the provisions of section 402 of the Act of October 6, 1917, 40 Stat. 409, and in force at the time the certificate of insurance was issued to O'Neill, contained the following regulations relative to the payment of premium:

"Premiums shall be paid monthly on or before the last day of each calendar month and will, unless the insured otherwise elects in writing, be deducted from any pay due him/her from the United States or deposit by him/her with the United States, and, if so to be deducted a premium when due will be treated as paid, whether or not such deduction is in fact made, if upon the due date the United States owe him/her on account of pay or deposit an amount sufficient to provide the premium, provided that the premium may be paid within 31 days after the expiration of the month, during which period of grace the insurance shall remain in full force. If any premium be not paid, either in cash or by deduction as herein provided, when due or within the days of grace, this insurance shall immediately terminate, but may be reinstated within six months upon compliance with the terms and conditions specified in the regulations of the bureau."

Also:

"In case the applicant does not desire the premium to be deducted from his/her pay (or his/her deposit) he/she should so elect in writing at the time of making application; but if no election is made it shall have the effect to provide for such deduction from his/her pay, or if such pay be insufficient, any balance from his/her deposit."

12. At the time of O'Neill's death, there was due him from the United States $55.23, of which $44.10 was the pay due from March 1, to March 21, 1921.

It is the contention of the government that the insurance was not in force at the time of O'Neill's death, since the policy had lapsed the previous October for nonpayment of premiums. If the policy was not in force, it is obviously because of some failure on the part of those representing the government to collect the premium according to the terms of the application and the regulations above noted. I find no statute or regulation requiring the insured to renew the authority which, in his application, he had conferred upon the government to deduct the premium from his pay.

On the contrary, the provisions of Bulletin No. 1 clearly contemplate that premiums shall be paid by deductions from pay, unless the insured elected, in writing, that they be otherwise paid. In this case there is no evidence whatever of any such election having been communicated to the government in writing or in any other way.

These regulations not only conferred authority upon the government, but imposed a very definite and a very positive duty as well. There was never a month during the period from October 5, 1920, to the date of O'Neill's death that the pay due him from the government did not exceed the amount of the monthly premium which had accrued. Furthermore, at the time of his death, there was owing to him more than enough to pay all the unpaid premiums that had accrued on the policy since October, 1920.

The case at bar is indistinguishable from Mortek v. United States (D. C.) 297 F. 485. In that case the court held that the policies there involved could not lapse so long as the government owed the soldier, as service pay, an amount sufficient to pay the premiums as they became due, the court remarking (page 488) that: "According to the plain language of the regulations, which are a part of the contract, the government must deduct the amount of the premiums from any pay due the soldier from the government, whether the soldier is still in the service or has been discharged therefrom, and that such premiums, when due, must be treated as paid, whether or not such deduction is in fact made, if upon the date the premiums are due the government owes to the soldier an amount sufficient to provide the premiums." See, also, Crawford v. United States (D. C.) 291 F 801.

To hold that the insurance has lapsed for nonpayment of premium is not only to overlook the manifest intention of the regulations which determine the rights of the parties, but also to enable the government to profit by its own default, much to the detriment of an innocent beneficiary. Such a result must inevitably lead to the conclusion that the government is now estopped from availing itself of the defense which it has seen fit to set up to this petition.

I find and rule, in conclusion, therefore, that the policy was in force at the time of the death of O'Neill, and that the petitioner is entitled to recover the installments due thereon up to the date of the petition after deducting, of course, the premiums which the government had previously failed to deduct. This amount, I understand from the memorandum agreed to, is $5,430, for which sum judgment may be entered.

If the above does not accurately represent the exact sum due under the certificate of insurance in question, and the parties cannot stipulate as to the amount, they may apply for further hearing for a modification of my finding respecting the amount of the judgment.