## UNGER et al. v. UNITED STATES.

### No. 766.

Circuit Court of Appeals, Tenth Circuit.

June 30, 1933.

Rehearing Denied July 31, 1933.

Glenn O. Young, of Sapulpa, Okl., for appellants.

Lawrence A. Lawlor, of Washington, D. C. (John M. Goldesberry and Alfred E. Williams, both of Tulsa, Okl., and J. O'C. Roberts and Wilbur C. Pickett, both of Washington, D. C., on the brief), for the United States.

Before LEWIS and PHILLIPS, Circuit Judges, and JOHNSON, District Judge.

JOHNSON, District Judge.

James T. Graham enlisted in the military service of the United States on May 28, 1918. He was honorably discharged on June 17, 1919. He re-enlisted on July 8, 1919, and was again honorably discharged on July 7, 1920. During the period of his first enlistment he applied for and was granted war risk insurance under the Act of Congress of October 6, 1917 (40 Stat. 398), in the sum of $10,000. He died February 5, 1928. This suit was brought in the court below by the administrator of his estate and his mother as beneficiary to recover upon the contract of insurance granted the deceased upon the ground that he became totally and permanently disabled while his insurance was in force.

It is not in dispute that the monthly premiums upon the insurance granted the deceased were deducted from his pay as a soldier and applied during the period of his first enlistment. It also is not in dispute

that the premiums upon his insurance were not deducted from his pay and applied during the period of his second enlistment, and the premiums were not otherwise paid by the deceased. This situation presents the sole question in the case on this appeal.

It is the contention of the United States that the insurance of the deceased lapsed at the expiration of the grace period following the last payment of premium deducted and applied during his first enlistment. The trial court sustained this contention and dismissed the action. If this ruling was correct or is not reviewable, the judgment must be affirmed. It is the contention of appellants that premium deductions from the pay of the deceased should be treated as having been made during the entire period of the second enlistment of the deceased. If this contention is correct and the question is reviewable, the judgment of the trial court must be reversed.

The trial court made the following special findings:

"That the monthly premiums on said insurance policy were paid for each and every month during his said first enlistment by having said premiums deducted from the monthly pay check of the said James T. Graham, but that during his second enlistment no deductions were made from his monthly pay check, and that said insurance was not kept alive during his second enlistment, as a result thereof.

"That because said James T. Graham knew that his insurance premiums were deducted from his monthly pay check during his first enlistment, and knew that such premiums were not being deducted from his monthly pay check during his second enlistment, that he, by his own choice or wish, treated said policy as lapsed, and that said policy did lapse for non-payment of the premium due July 1, 1919, and that the administrator of the estate of James T. Graham, deceased, and Fannie V. Graham cannot at this late date escape the acts of the insured in allowing his policy to so lapse and cannot revive said policy so as to hold the same in full force and effect during the second enlistment of said James T. Graham, deceased."

The only matters in the record relied upon to support the waiver of the deceased and the estoppel of plaintiffs implied in the finding are the government pay rolls from which it appears no deductions for the insurance premiums were made by the paymaster during the second enlistment, and the information required to be furnished enlisted men when discharged from the service respecting their war risk insurance as promulgated by the Secretary of War March 31, 1919, in paragraph 74 of Special Regulations No. 72.

The case was tried by the court upon written waiver of a jury. Appellants at the conclusion of the trial failed to ask for a declaration of law or otherwise to ask for judgment in their favor, or to except to the granting of the motion of the United States for judgment in its favor. On this state of the record this court may not pass upon the sufficiency or insufficiency of the evidence to support the judgment.

In our view, however, the question presented by the record is one of law, and may not be disposed of by inferences of fact as to the knowledge or the unwritten choice or wish of the deceased respecting deductions from his pay for premiums accruing on his insurance during his second enlistment. Under the law and regulations, it was the duty of the paymaster of the army either to make the deductions during his second enlistment or it was not.

Section 1339 of the Army Regulations in force at that time provided:

"Any enlisted man honorably discharged at the termination of an enlistment period who re-enlists within three months thereafter shall be entitled to continuous service pay in addition to the initial pay provided by the Act of May 11, 1908."

The application for the insurance granted to the deceased was in writing and contained the following:

"I authorize the necessary monthly deduction from my pay, or if insufficient, from any deposit with the United States in payment of the premiums as they become due, unless they be otherwise paid. I offer this application, and it is to be deemed made as of the date of signature, with premiums commencing from that date, and payable at the end of each calendar month beginning with the month in which this application is made."

Bulletin No. 1, issued by the Bureau of War Risk Insurance, was in relation to premium payments, and provided as follows:

"Premiums shall be paid monthly on or before the last day of each calendar month and will, unless the insured otherwise elects in writing, be deducted from any pay due him/her from the United States or deposit by him/her with the United States, and, if so to be deducted a premium when due will be treated as paid, whether or not such deduction is in fact made, if upon the due date the

United States owe him/her on account of pay or deposit an amount sufficient to provide the premium, provided that the premium may be paid within 31 days after the expiration of the month, during which period of grace the insurance shall remain in full force. If any premium be not paid, either in cash or by deduction as herein provided, when due or within the days of grace, this insurance shall immediately terminate, but may be reinstated within six months upon compliance with the terms and conditions specified in the regulations of the bureau."

The bulletin also provided that:

"In case the applicant does not desire the premium to be deducted from his/her pay (or his/her deposit) he/she should so elect in writing at the time of making application; but if no election is made it shall have the effect to provide for such deduction from his/her pay, or if such pay be insufficient, any balance from his/her deposit."

■ District Judge Brewster, in O'Neill v. United States (D. C.) 32 F.(2d) 313, page 314, in discussing a similar situation, very justly said:

"If the policy was not in force, it is obviously because of some failure on the part of those representing the government to collect the premium according to the terms of the application and the regulations above noted. I find no statute or regulation requiring the insured to renew the authority which, in his application, he had conferred upon the government to deduct the premium from his pay.

"On the contrary, the provisions of Bulletin No. 1 clearly contemplate that premiums shall be paid by deductions from pay, unless the insured elected, in writing, that they be otherwise paid. In this case there is no evidence whatever of any such election having been communicated to the government in writing or in any other way.

"These regulations not only conferred authority upon the government, but imposed a very definite and a very positive duty as well."

In Mortek v. United States (D. C.) 297 F. 485, page 488, District Judge English, construing the regulations promulgated by the Bureau of War Risk Insurance, said:

"I further find that the policies here involved could not lapse so long as the government owed to the soldier, as service pay, an amount sufficient to pay the premiums as they became due, and according to the plain language of the regulations, which are a part of the contract, the government must deduct the amount of the premiums from any pay due the soldier from the government, whether the soldier is still in the service or has been discharged therefrom, and that such premiums, when due, must be treated as paid, whether or not such deduction is in fact made, if upon the date the premiums are due the government owes to the soldier an amount sufficient to provide the premiums."

■ The views expressed by these two judges are, we believe, wholesome and just. Under the army regulations above quoted entitling the deceased to continuous service pay from June 17, 1919, the date of his first discharge, it is manifest that he at all times during his second enlistment had funds due him from which the premiums upon his insurance could have been deducted and applied by the paymaster. Under the authorization contained in his application, not having been revoked in writing, such deduction and application should have been made. Under the express provisions of bulletin No. 1, above quoted, the premium "will be treated as paid whether or not such deduction is in fact made, if upon the due date the United States owe him * * * on account of pay * * * an amount sufficient to provide the premium."

We are of opinion the trial court erred in dismissing the action. The judgment is reversed, and a new trial granted.