## UNITED STATES v. SMITH.
### No. 7109.

Circuit Court of Appeals, Ninth Circuit.
Nov. 6, 1933.

George Neuner, U. S. Atty., and Rex Kimmell, Asst. U. S. Atty., both of Portland, Or. (J. O'C. Roberts, Solicitor, Davis G. Arnold, and Wilbur C. Pickett, all of Washington, D. C., Attys. Veterans' Administration, of counsel), for the United States.

J. J. Crossley, of Portland, Or., for appellee.

Before WILBUR, SAWTELLE, and MACK, Circuit Judges.

WILBUR, Circuit Judge.

The appellee brought this action against the government to recover on a policy of war risk insurance issued to her son Elias Melvin Zimmerman in which she was named beneficiary.

The sole question involved in the case is whether or not the war risk insurance policy issued December 3, 1917, on the application of the insured was in effect on June 30, 1921, when he died. This question, in turn, depends upon whether or not the insurance premiums chargeable to the insured should be deemed to have been paid by him as required by the terms of the policy notwithstanding the fact that he did not in fact pay the premiums and no deductions were made from his pay therefor after the period of his enlistment which expired March 17, 1918. The facts were stipulated and may be briefly summarized as follows:

The insured enlisted in the United States Navy on March 18, 1914, at Portland, Or., as an apprentice seaman. He served throughout such enlistment and was honorably discharged at the expiration thereof on March 17, 1918. During this enlistment, to wit, on December 3, 1917, he made application for war risk insurance in the amount of $10,000 and at the time of his application for such insurance he expressly authorized deduction to be made from his Navy pay for the purpose of paying the monthly premiums on his insurance. In pursuance of this authorization, such deductions were regularly made until the expiration of his first enlistment on March 17, 1918. He re-enlisted on March 18, 1918, served throughout such enlistment, and received an honorable discharge therefrom September 15, 1919. He re-enlisted the next day, September 16, 1919, and served thereafter until his death, June 30, 1921.

The insured was the holder of continuous service certificate No. 49689. Pay was due the insured for each and every day from and including March 18, 1914, to the date of his death, June 30, 1921. At the time of his dis-

charge on September 15, 1919, the insured was paid all the money then due him by the defendant, without any deductions then or theretofore for or on account of premiums upon his policy. At the time of his death, June 30, 1921, the pay then due the insured was paid to the plaintiff, his mother, without such deductions.

From the foregoing stipulated facts, it is clear that at the expiration of the second enlistment the insured was paid and accepted the entire balance due him from the government without any deduction of the premiums due and past due upon the policy of war risk insurance issued to him by the government, if such policy was in force. The continuation of this insurance by the provisions of the law and the terms of the policy was made dependent upon the payment of the insurance premiums when due. The appellee claims, and the trial judge decided, that the insurance premiums should have been deducted from the pay of the insured when and as they accrued, by reasons of the direction to that effect given by the insured at the time he applied for his policy, as was done during the enlistment in which the policy was issued. On the other hand the government claims that the original direction was not effective after the discharge of the insured in March, 1918, and that during the subsequent enlistment and at its termination by an honorable discharge both parties to the policy treated it as ended by the failure to pay premiums as therein agreed.

We have then to consider the effect of the transactions between the government and the insured during the enlistment beginning March 18, 1918, and at the time of his discharge therefrom. In view of the facts that the war risk insurance is purely a voluntary affair so far as the sailor is concerned, and that by the terms of the law and of the war risk insurance policy, and the regulations issued in pursuance of the law, the payment of premiums is essential to the continuance of the insurance, the voluntary acceptance by the insured of his full pay without deductions for premiums and without any provisions for otherwise paying the premiums, would clearly terminate the insurance by reason of the failure to pay the premiums when due in the absence of other controlling considerations. In this connection it should be noted that the method of payment of premiums by "checking the pay account" of the sailor is a mere convenience for the benefit of the insured. By "checking the pay account" is meant the debiting of that account with the amount of the insurance premium. The appellee contends that, under the regulations issued by the Treasury, War, and Navy Departments, it was the duty of the Navy paymasters in charge of insured's account to have checked his account for the amount of the war risk insurance premiums, and that the failure so to do is a neglect chargeable to those officers and not to the insured, and consequently the insurance remained in effect notwithstanding this neglect.

It is conceded by the government that this position of the appellee is correct in so far as the first enlistment is concerned. Appellee's position in this case is based largely upon the theory that the insured held a continuous service certificate, and, consequently, the service of the insured was the same as though the original enlistment and the obligations of the government and of the insured under that enlistment continued throughout the entire period that the insured served as a sailor in the United States Navy, and that for the purposes of determining the rights of the government and of the sailor, the discharge and re-enlistment should be ignored. His service was in fact continuous, that is to say, there was no day during the entire period from his first enlistment until the date of his death when he was not in the Naval service of the government. There was, however, a hiatus in that service due to the discharge and re-enlistment. The continuous service certificate was evidence that the insured was entitled to certain rights and benefits accruing under the law by reason of continuous service. In other words, it is evident that for certain purposes the government regarded his re-enlistment as a continuation of his service. The only other manner in which a sailor could serve the government continuously was by an extension of the enlistment for a period limited by statute. The policy of the government, as indicated by the legislation bearing upon the subject of enlistment, re-enlistment, and extension of enlistment, is to limit the period of service of the sailor to a fixed period at the expiration of which the contract of enlistment expires. In order to induce him to re-enlist and to continue in the service of the government with the accruing benefit to the government of his service training, certain inducements are held out to him, such as increased pay, increased rating, and retirement pay. These inducements offered by the government, however, do not in any manner affect the fact that the original or subsequent enlistments are separate contracts. Each re-enlistment is an absolutely new contract be-

tween the government and the sailor. The obligations assumed by the government in the event of re-enlistment are different from those resulting from the earlier enlistments. These obligations are fixed by statute and by the regulations of the department and by reason thereof the sailor, who serves continuously by re-enlistment or by an extension of an existing enlistment, receives an additional consideration for the more valuable service thus rendered the government during the subsequent enlistment.

■ The discharge, however, under any enlistment absolutely terminates any contractual relation between the government and the sailor and the new relations assumed by each in connection with the re-enlistment are entirely separate and distinct from the relations theretofore existing except as they are altered by statute or regulation applicable to the new status arising from the re-enlistment. With these considerations in mind, we continue the statement of facts as shown by the record.

It appears from the findings of the trial court that bulletin No. 1 issued in pursuance of section 402 of the act of October 6, 1917, 40 Stat. 409, in force at the time the policy of insurance was issued to the insured, contained the following regulations relative to the payment of premiums:

"Premiums shall be paid monthly on or before the 1st day of each calendar month and will unless the insured otherwise elects in writing be deducted from any pay due him from the United States or deposit by him with the United States and if so to be deducted a premium when due will be treated as paid whether or not such deduction is in fact made, if upon the due date the United States owe him on account of pay or deposit an amount sufficient to provide the premium; provided that the premium may be paid within thirty-one (31) days after the expiration of the month during which period of grace the insurance shall remain in full force;  *  *  * in case the applicant does not desire the premium to be deducted from his pay he should so state in writing at the time of making application; but if no election is made it shall have the effect to provide for such deduction from his pay or if such pay be insufficient any balance from his deposit."

It is conceded by the government that during the enlistment in which the war risk insurance policy was applied for, issued and authority to check the pay of the insured was given, the policy would remain in force and effect under the provisions of this rule regardless of whether or not such deduction was in fact made, but the deductions had in fact been made and the insurance was in effect at the time of the discharge of the insured.

During the enlistment beginning March 18, 1918, terminated by honorable discharge in September, 1919, certain rules and regulations were promulgated with relation to war risk insurance which have a bearing upon the situation.

■ On November 15, 1918, the Navy Department, Bureau of Supplies and Accounts, issued an order concerning war risk insurance and formal allotments. This order provided, among other things, in section 5:

"Every application for insurance which is correct, shall be recorded at once by the officer carrying the account of the applicant. A description of the insurance shall be entered on the pay roll and a record kept similar to that kept for Navy voluntary allotments (S & A Form 6). The following indorsement will be placed in the back of every recorded application for insurance:

"——————, 19—
(Day)  (Month)

"Recorded by me this date. Checkage of premium ($———) will be made by me monthly from date of application.

"First checkage made ——————, 19—
(Day) (Month)

"for $———

"——————
"—————— Pay Corps, USN."

Section 8 provided:

"Checkage of insurance premium will continue while a man is in a pay status, or until the insurance is cancelled by written request over the man's signature, forwarded through the officer of the Pay Corps carrying his account."

Section 11 of this order, as amended January 13, 1919, provided:

"On discharge every man having an insurance application shall be furnished with a certified copy thereof and Treasury Bureau of War Risk Insurance Form 2303, 'Information Relative to Compensation and Continuance of War Risk Insurance,' properly filled out in duplicate. He shall be instructed to forward both copies of Treasury Bureau of War Risk Insurance Form 2303 to the Bureau of War Risk Insurance with the first remittance of premium by him. He shall be further instructed that in case of reenlistment he shall give a certified copy of insurance application to the officer of the Pay Corps taking up his pay account. The officer of the Pay Corps shall check the monthly premium and notify the Disbursing Division, Supplies

and Accounts, stating the date of first checkage by him."

It will be observed that under this order the application for insurance in the first instance and upon re-enlistment the deposit of a certified copy of his insurance application with the officer of the pay corps taking up his pay account are deemed to be sufficient to justify the checkage of the pay account of the insured.

We may assume then that at the time of the discharge of the insured in September, 1919, he was advised that upon re-enlistment he should give a certified copy of his insurance application to the officer of the pay corps taking up his pay account. This assumption is based upon the presumption of the performance of official duty. By Treasury Decision No. 44, Bureau of War Risk Insurance, issued May 17, 1919, it was provided in part as follows:

"1. The insurance granted under Article IV of the War Risk Insurance act will not be permitted to lapse for nonpayment of premium while the insured is in the active military or naval service and premiums therefore are authorized to be deducted from the insured's pay or deposit, except as hereinafter provided. * * *"

On September 29, 1919, Treasury Decision No. 44 was revoked by Treasury Decision No. 48 whereby the word "therefor" was substituted for the word "therefore" in Treasury Decision No. 44. The difference between these two decisions is that under Treasury Decision No. 44 hereinabove quoted it might appear that the order authorized the deduction of the premium from the pay account of the insured regardless of whether or not it was authorized by the insured, whereas, under Decision No. 48, modifying the language of the earlier decision (44), it is argued by the government that the provision against permitting the lapse for nonpayment of premium while the insured is in the active military naval service applies only in cases where the "premiums therefor are authorized to be deducted from the insured's pay or deposit. * * *" It is claimed that this change was made to correct a typographical error in Treasury Decision

No. 44. If both the insured and the government had treated the authorization for checkage made by the insured at the time of his application for war risk insurance as continuing throughout the subsequent enlistments, the checkage would have been made and the insurance premium thus paid. If, however, by some inadvertence the checkage was not made at the proper time to continue the insurance in force, the default of the officers in failing to make the checkage, if duly authorized thereto, would not have affected the rights of the insured. But where neither the government nor the insured treated the authorization in the previous enlistment as continuing in the subsequent enlistment and the insured not only failed to do that which was necessary on his part to be done to secure the checkage of his account, namely, to notify the officer of the existence of his war risk insurance by depositing with him a certified copy of his application for the insurance, and where by reason of his neglect no checking of his account was in fact made, and where, knowing as he must have known, that there was no such checkage of his account, he accepted the full amount of his pay at the time of his discharge without any deduction for premiums due and earned upon his policy if it was in force, we are at a loss to know upon what theory we can hold that the insurance was in effect. It follows that at the expiration of the enlistment in September, 1919, the insured, by accepting the money which the appellee now claims should have been appropriated to the payment of the premium of the war risk insurance, in effect consented to an abandonment of his policy for his acceptance of the money which belonged to the government, if the insurance was in effect, cannot be considered otherwise than as a consent to the abandonment of the contract of insurance on his part and an agreement that the policy should be considered as lapsed.

We conclude then that the policy of insurance was not in effect on June 30, 1921, the date of insured's death, and the appellee, the beneficiary named in the policy, is not entitled to recover thereon.

Judgment reversed.