## UNITED STATES v. BARRY et al.
### No. 6313.

Circuit Court of Appeals, Sixth Circuit.

Dec. 11, 1933.

Wilbur C. Pickett, of Washington, D. C. (William McClanahan, Joseph M. Bearman, and R. G. Draper, all of Memphis, Tenn., and Will G. Beardslee, of Washington, D. C., and W. B. Snow, of Charlotte, N. C., on the brief), for the United States.

Charles M. Bryan, of Memphis, Tenn. (De Witt T. Henderson, of Jackson, Tenn., W. F. Barry, Jr., of Nashville, Tenn., and S. J. Everett, of Jackson, Tenn., on the brief), for appellees.

Before HICKS, HICKENLOOPER, and SIMONS, Circuit Judges.

SIMONS, Circuit Judge.

The appellees as the beneficiaries sued on a policy of war risk insurance issued by the government on the life of John N. Barry, deceased. From judgment in their favor upon an agreed statement of facts the government appeals.

The deceased soldier had been almost continuously in the military service of the United States from 1908 to the date of his death, March 31, 1920. His last enlistment prior to the passage of the War Risk Insurance Act began November 1, 1915, and terminated with his honorable discharge on April 24, 1918. During this period he applied for and was granted a policy of war risk term insurance. At the time of making his application he authorized deductions from his pay for payment of premiums as they became due, unless otherwise paid.

Section 13 of the War Risk Insurance Act (40 Stat. 399) authorizes and empowers the Director of the Bureau, subject to the general direction of the Secretary of the Treasury, to make rules and regulations necessary or appropriate to carry out the purposes of the act. Under this authority, Bulletin No. 1, Bureau of War Risk Insurance, was promulgated, which provides in part as follows: "Premiums shall be paid monthly on or before the last day of each calendar month and will, unless the insured otherwise elects in writing, be deducted from any pay due him/her from the United States or deposit by him/her with the United States, and, if so to be deducted a premium when due will be treated as paid, whether or not such deduction is in fact made, if upon the due date the United States owe him/her on account of pay or deposit an amount sufficient

to provide the premium, provided that the premium may be paid within 31 days after the expiration of the month, during which period of grace the insurance shall remain in full force. If any premium be not paid, either in cash or by deduction as herein provided, when due or within the days of grace, this insurance shall immediately terminate, but may be reinstated within six months upon compliance with the terms and conditions specified in the regulations of the bureau."

The bulletin also provides: "In case the applicant does not desire the premium to be deducted from his/her pay (or his/her deposit) he/she should so elect in writing at the time of making application; but if no election is made it shall have the effect to provide for such deduction from his/her pay, or if such pay be insufficient, any balance from his/her deposit."

During the period of enlistment referred to, Barry had sufficient pay due each month to cover his premiums, and they were paid. Upon his discharge in 1918 he immediately re-enlisted, was commissioned second lieutenant, was later promoted to a first lieutenancy, and honorably discharged September 10, 1919. During his period of service as an officer his premiums were paid by deductions specifically authorized by him from his officer's pay voucher, and it is stipulated that this was the only method by which his premiums could be paid while serving as an officer. The last deduction was made from his pay voucher for the month of August, 1919, and covered the premium due September 1, 1919. By virtue of the period of grace the policy, even in the absence of further premium payments, was in force until October 1, 1919, at which time the government still owed Barry a sum sufficient to pay additional premiums. On September 27, 1919, Barry again enlisted, was given the rank of sergeant major, and continued in the army until his death. At the time of his final enlistment no new authorization for deductions for premiums was given to the Bureau, and thereafter Barry received his full pay without deductions, although in varying amounts, but had at all times owing to him at the expiration of each month enough to have paid his current premium.

The determinative question is whether Barry's policy was in full force and effect at the time of his death because of the government's failure to deduct premiums from his monthly pay during his last enlistment.

It is contended on the part of the government that an allotment of army pay for war risk insurance premiums ceases to be effective with the expiration of the enlistment term in which the authorization was executed; that the provisions of Bulletin No. 1, supra, were never intended to apply to re-enlistment periods; that the Director of the Bureau was without statutory authority to make any regulation which would have such effect; and that Barry during the period of his final enlistment knowingly defaulted and knew that he was not insured after October, 1919. The appellees contend that Barry never having elected in writing to pay his premiums otherwise than by having them deducted from his pay, it remained the continuing duty of the government to so deduct them, and this obligation was terminated neither by his several discharges nor by the changed method of payment required of him while an officer.

We think it clear from the provisions of Bulletin No. 1, supra, that the election therein referred to was an election to be made at the time of filing application for insurance. The Bulletin so states. Failure to make an election at that time authorized and perhaps obligated the Director of the Bureau to deduct premiums from the soldier's pay. It does not follow, however, that once such authority or duty is ended by discharge it is automatically reinstated by subsequent re-enlistment. It was certainly never intended to place a burden so great upon the Bureau and the army paymasters.

That this is so seems clear from the provisions of paragraph 74, Special Regulation 72, promulgated by the Secretary of War, March 31, 1919, which require that at the time of leaving the service the insured shall receive explicit notice that he must pay premiums direct to the Bureau of War Risk Insurance if he wishes to continue the insurance, and requiring also that he be notified in writing of the date and amount of such premiums on a specific form which must be given to every officer and enlisted man on separation from the service. Undoubtedly upon Barry's discharge on September 10, 1919, such notice was given to him. It is true that there is nothing in the agreed statement of facts in respect thereto, but a presumption of regularity supports official acts of public officers, and in the absence of clear evidence to the contrary courts presume that they have properly discharged their official duties. United States v. Chemical Foundation, 272 U. S. 1, at page 15, 47 S. Ct. 1, 71 L. Ed. 131. And we may assume that Barry's discharge was in all respects regular.

Regulation 72, supra, and the form of no-

tice therein provided to be given to each discharged officer and enlisted man, are substantially identical with the Navy Department Regulation No. 40, and Form 2303, considered in the case of Sawyer v. United States, 10 F.(2d) 416 (C. C. A. 2). The regulations there considered were held to be appropriate to control the mode of carrying the act into effect, to have the force of law, and to be part of the contract upon which suit was brought. The same may be said of the regulations here. United States v. Smith, 67 F.(2d) 412 (C. C. A. 9), decided November 6, 1933. Compare, however, Unger et al. v. United States, 65 F.(2d) 946 (C. C. A. 10).

Moreover, the record clearly requires the conclusion that Barry's default was his deliberate and voluntary act or omission. Barry knew his insurance was not in force after October 1st. In addition to the notice given to him upon discharge, he received his, full pay during his final enlistment period. It is inconceivable that a soldier of his experience would not know precisely the amount of pay coming, even though from month to month it varied. He had been in the army since 1908, had been a second and first lieutenant, and was sergeant major during his final term. Subsequent efforts to have his insurance reinstated lends, in our opinion, additional support to this conclusion. In so far as they are urged in support of an inference that Barry did not know that his insurance premiums were not being paid, it is only necessary to say that when proven facts support equally two inconsistent inferences, there is no substantial evidence to support either, and judgment must go against the party having the burden. Pennsylvania R. Co. v. Chamberlain, 288 U. S. 333, 339, 53 S. Ct. 391, 77 L. Ed. 819.

Reversed and remanded for new trial.