## LONG v. MONARCH ACCIDENT INS. CO. OF SPRINGFIELD, MASS.

Circuit Court of Appeals, Fourth Circuit.
February 2, 1929.

No. 2789.

L. D. Lide, of Marion, S. C. (Joe P. Lane and W. C. Moore, both of Dillon, S. C., on the brief), for appellant.

J. B. Gibson, of Dillon, S. C. (Gibson & Muller, of Dillon, S. C., on the brief), for appellee.

Before PARKER and NORTHCOTT, Circuit Judges, and WILLIAM C. COLEMAN, District Judge.

WILLIAM C. COLEMAN, District Judge. This is an appeal from a judgment of the District Court for the Eastern District of South Carolina in a suit on a policy of health and accident insurance issued to the husband of the appellant (hereinafter called the plaintiff) by the Monarch Accident Insurance Company of Springfield, Mass., appellee (hereinafter called the Company). The suit was originally brought in the court of common pleas for Dillon county, S. C., and from there removed to the United States Court, where, the case being tried before a jury, at the close of its testimony, the Company moved for a directed verdict in its favor except as to the sum of $25, as to which it consented to a verdict for the plaintiff. The motion was granted, and it is from this action of the lower court in directing a verdict that this appeal is taken.

There are six assignments of error. The first three raise the question whether the trial court erred in directing a verdict for the Company as to the death benefit under the policy, since, as claimed, it was indebted at the time to the plaintiff in a sum sufficient to pay the overdue quarterly premium on the policy, and thereby to avoid a forfeiture of the policy which it was required to do as a matter of law; or whether the court should at least have submitted to the jury the question as to whether any such amount was then due and owing. The three remaining assignments of error question the correctness of the court's ruling in limiting to $25 plaintiff's right to recover sick benefits.

The material facts are as follows: On November 15, 1926, the Company issued to plaintiff's husband, who was engaged in the

grocery business, a health and accident insurance policy with plaintiff as beneficiary, in consideration of an annual premium of $65, payable in quarterly installments of $16.25 on the 1st days of November, March, June, and September. The principal sum of the policy was $5,000, the weekly accident indemnity $25, and a similar weekly indemnity for sickness. When the insured should reach the age of 50, an increase in the quarterly premium was provided for. The policy contained, among others, the usual standard provisions. Such provisions as are pertinent to the issues raised are hereinafter quoted.

The advance premium and that due March 1, 1927, were paid, but none others. On April 29, 1927, notice of sickness for one week was given to the Company at its home office. Thereupon blank proofs of illness, to be executed by the insured and his attending physician, were duly forwarded, were executed, mailed back to the Company, and received on May 20th. These showed that the insured had been suffering from "weakness, adrenal, insufficiency, complications and hypotension," and that he had been treated by another physician for previous similar attacks. On May 25th, the Company wrote to both the insured and his physician asking for further information respecting the illness, but the insured replied, resenting the request, and saying he had no further information to give. Additional letters were written on June 3d, July 26th, and August 5th by the Company to the physician whom the insured stated had attended him during the previous attacks, in an endeavor to get additional information. Meanwhile, a notice that the insurance premium was due on June 1, 1927, had been mailed to him, and the premium not being paid when due, a letter, dated June 1st, was sent to the insured, stating that his policy had lapsed because of default in premium payment, and urging him to reinstate the policy by paying the premium. On July 12th the insured was injured in an automobile accident on a public highway near Sumter, S. C., as a result of which he died the following day.

On July 25th plaintiff's counsel wrote to the Company asking for blank proof of death, to which letter the Company, on July 29th, replied, advising that the policy had lapsed because of failure to pay the premium and denied liability. Thereupon counsel for plaintiff contended that there was no lapse because of the fact that her husband had filed a claim for sick benefits in an amount sufficient to cover the overdue premium. The Company admitted the filing of the claim, but took the position that it had never been able to get information sufficient to enable it to establish the time of the origin of the illness, essential under the sickness indemnity clause (hereinafter quoted); that it had never admitted indebtedness in any amount under the policy; and that thus there could be no offset for sick benefits against the premium. Suit was brought for $5,233.75, with interest from July 12, 1927; $5,000 being claimed as a result of the accidental death of the insured, the balance for sick benefits.

■■ Taking up the question raised by the first three assignments of error, we find no error by the trial court in directing a verdict for the defendant. The contract for insurance was made in South Carolina, when the policy was there issued to the insured, upon payment of the initial premium. Northwestern Mut. Life Insurance Co. v. McCue, 223 U. S. 234, 32 S. Ct. 220, 56 L. Ed. 419, 38 L. R. A. (N. S.) 57. It is, however, to be construed by the general commercial law as enforced by the federal courts, which are free to exercise their own judgment, independently of state decisions. Carpenter v. Providence Washington Insurance Co., 16 Pet. 495, 511, 10 L. Ed. 1044. We start with the general principle that in the absence of special agreement, failure to pay an insurance premium when due ipso facto forfeits the policy. New York Life Insurance Co. v. Statham et al., 93 U. S. 24, 23 L. Ed. 789; Klein v. Insurance Co., 104 U. S. 88, 26 L. Ed. 662; Thompson v. Insurance Co., 104 U. S. 252, 26 L. Ed. 765; Iowa Life Insurance Co. v. Lewis, 187 U. S. 335, 23 S. Ct. 126, 47 L. Ed. 204. Moreover, the policy expressly provides that "any failure to comply with the provisions of this policy shall render invalid any claim made hereunder."

■ It is true that the aforegoing principle has been qualified to this extent: That if money is absolutely due by the Company to the policyholder when a premium falls due, the Company should apply the same towards the premium and thereby, if possible, avoid forfeiture of the policy. This includes any excess of premiums paid, dividends, profits, benefit payments, and the like, but the offsetting of such credits will only be required where the company actually has in its hands at the time funds which are absolutely due and payable. Thus, in

McCampbell v. New York Life Insurance Co. (C. C. A.) 288 F. 465; Id., 262 U. S. 759, 43 S. Ct. 705, 67 L. Ed. 1219, under the terms of a life policy profits were not to be apportioned until the end of a 20-year accumulation period, and it was held that the beneficiary was not entitled to claim that the life of the policy was extended by reason of earned profits before the expiration of such period. To the same effect, see New York Mutual Life Insurance Co. v. Girard, etc., Life Insurance Co., 100 Pa. 172. While the precise question appears never to have been squarely presented for decision by the Supreme Court of South Carolina, that court would seem to have at least impliedly approved of the general principle, above stated, in Cole v. Jefferson Standard Life Insurance Co., 113 S. C. 22, 100 S. E. 893. There the insured had borrowed $390 on his policy and had died leaving an overdue unpaid premium of $91.92. The policy provided for a distribution of the profits only at the end of twenty years. Plaintiff offered to prove the profits at the end of five years as being sufficient in the hands of the Company to offset the unpaid premium, but this evidence was excluded by the trial court and a judgment entered for the defendant following a directed verdict. On appeal this judgment was reversed and a new trial ordered, because the appellate court found that, since the law of South Carolina prohibited policies being issued with a longer distribution of profits period than five years, regardless of the express language of the policy, this restriction must be read into it.

The foregoing cases represent, we believe, both the weight of authority and the correct view. Such cases as North American Accident Ins. Co. v. Bowen (Tex. Civ. App.) 102 S. W. 163, and Girard Life Insurance Co. v. Mutual Life Insurance Co., 97 Pa. 15, upon which plaintiff relies, are not in fact contrary to this view, because in those cases liability of the company for *some* amount in its hands was fixed, whereas in the present case *no* liability whatsoever was admitted or shown to have existed at the time of default in the premium payment. The Company was not merely investigating the *extent* of its liability, but rather whether it was liable *at all*. The insured had filed his claim, but the Company saw fit to investigate all the facts as it had a right to do before admitting liability. The policy provides for sick benefits only in case of sickness "originating after this

policy has been in force thirty days from its date," and further provides that "the investigation of any claim hereunder * * * shall not be construed as a waiver of any of the rights of the Company in the defense of any claim under this policy."

The illness of the insured was alleged to have begun in April. The policy was issued the previous November. The character of the alleged illness, neurasthenia, justified the Company in making a full investigation, especially in view of the attitude assumed by the insured and the statement of one of his physicians that he did not think "anybody could express an opinion as to the probability of the beginning of this disease in a scientific way." Thus, there appears to have been neither bad faith nor undue delay on the part of the Company in extending its investigations as it did.

Turning to the question raised by the remaining assignments of error, namely, whether the trial court was correct in limiting to $25 any recovery which the plaintiff might be entitled to on account of sick benefits, it seems equally clear that this ruling is correct. The insured gave notice of only one week's disability. Plaintiff claims that the insured was excused under the policy from giving notice of additional disability, covering some nine weeks, by virtue of that disability itself.

The policy expressly provides that "written notice of injury or of sickness on which claim may be based must be given to the Company within twenty days after the date of the accident causing such injury, or within ten days after the commencement of disability from such sickness," but that "failure to give notice within the time provided in this policy shall not invalidate any claim if it shall be shown not to have been *reasonably possible* to give such notice and that notice was given as soon as was reasonably possible." There is a further provision that failure on the part of the insured to give notice as provided in the foregoing "shall not invalidate any claim except that the date on which notice is actually given shall be considered as the date of commencement of disability and of the indemnity period." The intent of these provisions when considered together, as they must be, is that notice is never completely dispensed with, but merely that its tardiness is penalized. It is very evident that it was "reasonably possible" for the insured to have given the

932

required notice at any time during the period in question. He was confined to his home for only one week, and while it appears he went to a·hospital shortly thereafter, he remained only three days and was not critically ill. Furthermore, in the month of May, his doctor stated that he was improving.

■■ It is true that in spite of such provisions as are contained in the policy, the law will favor the insured in exceptional cases, but he will never be completely excused from giving notice unless his mental or physical condition is actually such as to render notice impossible. Levan v. Metropolitan Life Insurance Co., 138 S. C. 253, 136 S. E. 304. The burden of proving compliance with the provisions of the policy is upon the insured or the beneficiary. Metropolitan Casualty Insurance Co. of New York v. Johnston (C. C. A.) 247 F. 65, 7 A. L. R. 175. As to any contention that the notice, seasonably given, of one week's illness was sufficient under the circumstances to cover the additional period, its unreasonableness is apparent when we consider that part of this period antedates the particular week.

■ Lastly, it is not prejudicial to the Company's rights that it consented to a directed verdict in favor of the plaintiff for $25 as sick benefits, because this was done only after the court had correctly ruled that the only question to be submitted to the jury was whether this sum was in fact due and owing to the plaintiff, and the fact that the jury might have found such sum to have been due and owing, or that the Company at the close of the case admitted this fact because of the smallness of the amount and in order to hasten the conclusion of the matter, is not tantamount to saying that there was, prior to the trial, any fixed or liquidated sum due and owing by the Company to the plaintiff.

In reply to the argument that the principle here announced results in undue hardship to an insured or his beneficiary, it is sufficient to say that the insured is only required to do what he voluntarily contracted to do. As was said by the Supreme Court in New York Life Insurance Co. v. Statham et al., supra (page 31 of 93 U. S. [23 L. Ed. 789]), "courts cannot with safety vary the stipulation of the parties by introducing equities for the relief of the insured against their own negligence."

There being no error by the lower court, the judgment is accordingly affirmed.