## MIKELL v. UNITED STATES.
### No. 3392.

Circuit Court of Appeals, Fourth Circuit.
April 4, 1933.

Irvine F. Belser, of Columbia, S. C. (Melton & Belser, of Columbia, S. C., on the brief), for appellant.

John M. George, of Richmond, Va., Atty., U. S. Veterans' Administration (Henry E. Davis, U. S. Atty., of Florence, S. C., on the brief), for the United States.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

PARKER, Circuit Judge.

This is an appeal in a war risk insurance case in which verdict was directed for the government. Two points are presented by the appeal: (1) That the policy sued on did not lapse prior to the death of the insured because the government was indebted to him in an amount which, if applied in payment of premiums, would have continued the policy in force beyond his death; and (2) that, on the date when the government contends the policy lapsed for nonpayment of premiums, it had matured by reason of the total and permanent disability of the insured.

On the first point the facts are that insured was issued a war risk term insurance policy in the sum of $7,000 on January 22, 1918. He was transferred to the United States Naval Reserves on April 28, 1919, when his active pay ceased, and, as he paid no

premiums thereafter, his policy lapsed for nonpayment of premiums on June 1, 1919. It appears that on April 28, 1919, the government was due him, for difference in pay on account of a promotion, the sum of $21.27, and that this sum was never paid to him. On June 27, 1927, insured applied for and obtained a reinstatement and conversion of his lapsed term policy under the provisions of the World War Veterans' Act 1924, as amended (38 USCA § 421 et seq.), receiving two policies in lieu of his original term policy.. One of these was a convertible term policy in the sum of $4,000, bearing a monthly premium of $2.96 or a quarterly premium of $8.84; the other, a twenty payment life policy in the sum of $3,000.00, bearing a monthly premium of $6.69 or a quarterly premium of $20.01. The premiums on both of these policies were paid up to November 1, 1927, and nothing was paid on either of them thereafter. Insured died February 26, 1928. The beneficiary has brought this suit under the $4,000 term policy, contending that the balance in pay due insured by the government should be applied in payment of the premium on this policy so as to keep it alive.

, On the second point, there is evidence from which it might be concluded that prior to November 1, 1927, insured was suffering from chronic appendicitis which was not diagnosed as such. Insured's death resulted from a ruptured appendix; and the contention is that, because of the mistaken diagnosis and consequent lack of proper treatment resulting in death, the appendicitis must be treated as a total and permanent disability.

■ Neither contention of plaintiff can be sustained. On the first, we do not think that the amount due insured by the government on account of his promotion could properly be applied to the payment of premiums on his converted policies; and, even if this had been done, it would not have extended the policies beyond the date of insured's death. Under the terms of the application for the original war risk term policy and the regulations applicable thereto, the balance due insured on account of services was applicable to the payment of premiums for the purpose of keeping that policy alive. Mortek v. U. S. (D. C.) 297 F. 485; Williams v. U. S. (D. C.) 293 F. 646; Crawford v. U. S. (D. C.) 291 F. 801. But there was nothing in the applications for the converted policies, or in the law or regulations relating thereto, which would authorize moneys due insured by the government to be applied on premiums due thereunder.

■■ The rule that a private insurance company which has moneys payable to an insured should apply same towards the payment of a premium, to avoid a forfeiture of a policy (see Long v. Monarch Accident Ins. Co. (C. C. A. 4th) 30 F.(2d) 929), has no application to the government, except possibly with respect to moneys due under policies of insurance. The rule as it relates to private companies is based upon the duty of such companies to use funds belonging to the insured to prevent a forfeiture of his rights under the insurance contract. See Pfeiffer v. Missouri State Life Ins. Co., 174 Ark. 783, 297 S. W. 847, 54 A. L. R. 600. Moneys due by the government, however, can be paid out or applied only in accordance with the provisions of law; and there is no duty or power on the part of public officials to apply them otherwise. When the government goes into the business of insurance, it is permissible to apply to it the rules applicable to insurance companies so far as transactions relating to insurance are concerned, but no farther; and an insured who defaults in the payment of premiums on a government policy is not entitled to have his insurance continued in force merely because in some of its various activities, not connected with insurance, the government is indebted to him. Such indebtedness might arise in many ways, as for salaries due civil employees, for tax refunds, for claims, etc.; and the officer charged with making payments to the person entitled would not be justified in making them to the War Risk Insurance Bureau without specific direction to that effect. If he should make them without such direction, he would be answerable under his bond for doing so. There is no basis, therefore, for the presumption as to the application of moneys which prevails in the case of private insurance companies.

■ But, even if the amount due the insured by the government were applied to the policies of insurance which he was carrying, it would not help the cause of plaintiff. If it was the duty of the government to apply this money on insurance, its duty was to apply it on both policies of insured; and, when so applied, it would have carried the policies for only two months and three days or until January 3d, whereas insured did not die until February 26th. The contention that the application must be made after the death of insured in the manner which then appears to be most advantageous to him, is manifestly untenable. If the duty to make the application existed at all, it existed at the time when the default in the payment of premiums oc-

curred; and the manner in which the application should be made must be determined as of that time.

■ The contention that insured was totally and permanently disabled prior to the lapse of the policy is entirely lacking in merit. Even if he had appendicitis at that time, it did not disable him; for the evidence is that he continued his work until within a few days of his death. Plaintiff contends, however, that, because he had appendicitis, he should not have worked and that by continuing to work instead of submitting to an operation, he caused the disease from which he was suffering to terminate fatally; the argument being that the seriousness of his ailment must be judged by its result and in the light of the mistaken diagnosis. The answer to this is that, whatever the diagnosis, it is clear that the appendicitis at the time of the lapse of the policy had not reached the stage where it constituted permanent disability; for it was not based upon such conditions as to render it reasonably certain that it would continue throughout the life of the insured. There is nothing in the evidence to justify the conclusion that it might not have been cured at that time if it had been properly treated. As we said in the case of U. S. v. Diehl (C. C. A. 4th) 62 F.(2d) 343, 345: "The burden of proof rests upon the plaintiff in an action of this character to establish that he became totally and permanently disabled before the policy lapsed for the nonpayment of premiums. He must show two things: (1) That before the policy lapsed he was totally disabled, i. e., that his disability was of such a character that he was incapable of pursuing with reasonable regularity any substantially gainful occupation; and (2) that this disability was of a permanent character, i. e., that it was based upon conditions which rendered it reasonably certain at the time that it would continue throughout the life of the insured. Of course, the subsequent history of the insured may be considered for the purpose of determining whether a disability deemed only partial or temporary at the time of the lapse of the policy was in fact total and permanent. But partial disability existing at the time of lapse does not warrant a recovery, even though total disability may subsequently result; and total disability based upon conditions which at the time of lapse do not render it reasonably certain that such total disability will continue through life is not to be deemed permanent, even though a subsequent change of conditions may render such disability permanent in character."

See, also, U. S. v. Stack (C. C. A. 4th) 62 F.(2d) 1056, and Eggen v. U. S. (C. C. A. 8th) 58 F.(2d) 616.

There was no error, and the judgment appealed from will be affirmed.

Affirmed.