## AMERICAN NAT. INS. CO. v. YEE LIM SHEE et al.

### No. 8877.

Circuit Court of Appeals, Ninth Circuit.
June 14, 1939.

Dinkelspiel & Dinkelspiel, of San Francisco, Cal., for appellant.

A. B. Bianchi, James M. Hanley, and Bianchi & Hyman, all of San Francisco, Cal., for appellees.

Before GARRECHT, HANEY, and STEPHENS, Circuit Judges.

STEPHENS, Circuit Judge.

This is an appeal from a judgment of the district court in an action brought by plaintiff-appellees to recover on an insurance policy issued by appellant insurer upon the life of Yee Sheong. Appellees Yee Lim Shee and Tong Yee (Tong Yee Shee) were named beneficiaries in the policy, as was one Joe Yee. Joe Yee predeceased the insured and appellee James M. Hanley, as executor of the last will and testament of Yee Sheong, the insured, joined with Yee Lim Shee and Tong Yee Shee as parties plaintiff. The complaint was originally filed in the Superior Court of the State of California, but upon application of appellant was removed to the federal court on ground of diversity of citizenship. A jury having been waived, trial was had before the court which made written findings of fact and conclusions of law and entered judgment thereon for plaintiff appellees in the amount of the face value of the policy plus disability benefits accruing prior to the death of the insured, less the amount of a policy loan due at such time.

Appellant on January 11, 1928, issued to Yee Sheong its twenty payment endowment at age of 85 years, non-participating policy. As issued the policy was payable on the death of the insured to his wife, but by amendment the beneficiary was changed to Yee Lim Shee, his wife (2/5), Joe Yee, his son (2/5) and Tong Shee, his sister (1/5). Joe Yee predeceased the insured and in accordance with a policy provision the estate of the insured thereby became substituted in place of the deceased beneficiary.

The policy provides for the payment of premiums in quarterly installments, either by cash or premium loans, and in part by coupons attached to the policy. It is admitted that all the quarterly installments due to and including July 11, 1934, were paid and received.

Insured had from time to time availed himself of the loan provisions of the policy and the appellant had made various premium loans, the continuation and last of which was represented by a policy loan note dated September 5, 1934 in the sum of $1,637.50. This note exhausted the surrender or loan value of the policy, except for the sum of $.09, which latter sum was the amount of an overpayment made by insured on the premium due in July, 1934. The interest required to carry the loan at the rate stipulated by the policy (6%) from October 11, 1934 to January 11, 1935, was $24.56. The total sum payable by insured to appellant by November 11, 1934, was $168.26.

One E. C. Norman, the manager of the San Francisco office of the appellant was authorized by and on behalf of appellant to receive and accept premiums and balances due on account of premiums on the policy.

There is attached to the policy a rider providing for total permanent disability benefits, as follows:

"After one full year's premium shall have been paid and before default in the payment of any subsequent premium hereon if the Insured, prior to attaining the age of sixty years at nearest birthday and while this Policy is in full force, shall furnish due proof to the Company at its Home Office that said Insured has become totally and permanently disabled by bodily injury or disease, so that said Insured is, and presumably will be permanently, continuously and wholly prevented thereby for life from performing any work for compensation, gain or profit, or from following any gainful occupation, and that such disability has then existed continuously for not less than ninety days, the Company will grant the following benefits:

"1. Waiver of Premium—The Company will, during the continuance of such disability, waive payment of each premium as it thereafter becomes due to the extent of an annual premium of $527.00 commencing with the annual premium due on the first policy anniversary after receipt of said due proof of disability.

"2. Life income to Insured—Immediately after the receipt of said due proof of disability the Company will pay to the Insured if then living and such disability still continue, the sum of One Hundred Dollars, and a like sum monthly thereafter during the life of the Insured and the continuance of the disability of said Insured Yee Sheong, prior to the maturity or settlement of this policy.

\* \* \* \* \* \*

"In addition to or independently of all other causes of total and permanent disability, the Company will consider the entire and irrecoverable loss of the sight of both eyes or the severance of both hands at or above the wrists, or of both feet at or above the ankles, or of one entire

hand and one entire foot at or above the wrist and ankle, respectively, as total and permanent disability within the meaning of this provision."

The policy anniversary was on January 11.

There was a policy coupon available for the payment of the seventh year (1934) premium in the sum of $89.40, and one-quarter thereof ($22.35) was available toward the payment of each of the quarterly installments for the year 1934. On or about January 11, 1934, insured forwarded said coupon to appellant for application and credit, and one-quarter thereof was applied to each of the January, April and July, 1934 installments. There was left in the hands of appellant on account of said coupon the sum of $22.35 for application on the last quarterly installment due October 11 of said year.

The trial court has found that on or about July 1, 1934, the insured suffered the entire and irrecoverable loss of the sight of both eyes and became totally and permanently disabled, which condition of disability existed continuously up to and including the time of his death. In the month of July, 1934, the insured, through his agent, Herbert Hanley, stated the facts concerning his total disability to E. C. Norman, the managing agent and person in charge of the San Francisco office of the defendant insurance company. Insured was at that time under employment contract with the Hotel Monroe as head of a kitchen crew. Norman at that time advised insured not to make and file the proof of total and permanent disability until around November, 1934, and to postpone such action until the insured was through with the Hotel Monroe. Some time in October, 1934, Norman furnished Herbert Hanley with the appellant's form No. 330 for the purpose of filing proof of total and permanent disability and on November 6, 1934, when the policy was in good standing and prior to the insured attaining the age of sixty years at nearest birthday, the insured filed with Norman a written claim and proof for total permanent disability benefits. This proof was at the request of the insured forwarded to the Home Office of appellant, and received by it prior to November 11, 1934.

The "Claimant's statement" portion of the proof of disability referred to stated that total disability began July, 1934; that the disability was the result of diabetes and cataract, time of contraction unknown. In answer to a printed query as to why in the opinion of the insured and his physician the disability was permanent, it was answered, "Cannot work". The "Attending Physician's Statement" signed by John M. Logan, M. D., gave "July 28, 1934; October 18, 1934" as the "Date of first consultation or treatment in present illness". Dr. Logan described the nature of the disease as "Diabetes mettetus, arteriosclerosis, Blood Pressure 220/100 Cataract both eyes". In response to the query as to why the physician considered the disease permanent it was stated, "Cataracts inoperable on account of diabetes". Dr. Logan stated he believed the disease to be total and permanent. A "Friend's Statement" signed by James N. Hanley, the insured's attorney, stated that the disability commenced "About September, 1934"; that insured "Seems completely disabled. Eyesight gone".

On November 10, 1934, the insured paid over to Norman, to whom premiums were generally paid, $47.90. This sum is just equal to one-third of a quarterly premium. It was paid over following a conversation between Herbert Hanley and Norman in the course of which Herbert Hanley stated that the insured was in straitened circumstances and would have great difficulty in paying a full quarterly premium, in response to which Norman said, "We can put this policy on a monthly basis, and if you pay $47.90 a month it will keep the policy in effect, and in the meantime the disability will be approved by the home office, and you will then have money coming in which will meet the premium on a monthly basis until it is finally all settled". The policy provided in this connection that premiums were payable quarterly and further provided that, "No officer other than those stated, and no Agent, has the power to make or modify this or any other contract of the Company in any respect whatever, and the Company is not responsible for, and shall not be bound by, any promises or representations made by any person other than the officers named [President, Vice-President, Secretary, Actuary], and then not unless said promises or representations are in writing and signed by one of the officers stated".

By letter of date November 21, 1934, appellant returned to insured the remittance of $47.90, and stated that because of

failure to pay the quarterly annual premium due October 11, 1934, within the period of grace, the policy was lapsed and forfeited. It was asserted that Norman had no authority to modify the policy. The insured thereafter, and up to February 11, 1935 through his attorney, James M. Hanley, made a monthly tender of said amount which on each occasion was rejected and refused.

By letter of December 3, 1934 the appellant denied liability as to disability benefits upon the grounds that the policy had lapsed for non-payment of the October 11th quarter annual premium and for the further reason that the proof for permanent total disability benefits showed upon its face that the requirements of the policy entitling the insured to disability benefits were not met.

On March 25, 1935, the insured filed a complaint in the Municipal Court at San Francisco, against said defendant insurance company for disability benefits under the policy. It was alleged therein, "That on or about the 4th day of October, 1934, plaintiff became, and was, permanently disabled, and at that time plaintiff requested defendant insurance company through its agent and servant E. C. Norman, for a form of claim of total permanent disability benefits".

It was further alleged, "That plaintiff at the request of said defendant Insurance Company thereafter filed with said Insurance Company a Proof of Total Permanent Disability and Proof of Claim on or about the 6th day of November 1934."

The disability clause of the policy was made a part of the complaint. The defendant company filed a general demurrer to the complaint averring that the complaint did not contain facts sufficient to constitute a cause of action, and on May 11, 1935 the Municipal Court made its order sustaining the general demurrer without leave to amend. On the same day the plaintiff filed with the Municipal Court his authorization and direction to the Clerk to enter the dismissal of the complaint and action against the defendant "without prejudice to the plaintiff to file a new action against defendant if plaintiff deems advisable". Thereafter defendant company moved the Municipal Court for an order striking the dismissal from the files. The motion was denied May 31, 1935. From the order denying the motion the defendant appealed to the appropriate

Appellate Division of the Superior Court of the State of California. In July, 1936, the Appellate Division affirmed the order denying the motion to strike the dismissal from the files. The Appellate Division handed down a memorandum opinion in connection with its judgment, in which it was stated,

"In the present case, if the plaintiff's written request to the clerk to enter dismissal was made before the court's order sustaining the demurrer without leave to amend, it was a nullity, and therefore accomplished nothing. And if the request to enter dismissal was made after the court had made its order, such request would be tantamount to an acquiescence in the court's ruling, or a waiver of a right of appeal by plaintiff.

\* \* \* \* \* \*

"If plaintiff's request to the clerk preceded the court's order, the entry of dismissal might properly have been stricken out as a nullity. But in view of the uncertainty as to priority, it may be inferred that the court treated the request as in any event a waiver by plaintiff of a right of appeal, and hence let the entry of dismissal stand."

The Court concluded that since "the defendant is subjected to no prejudice" the order should be affirmed.

Insured died on October 13, 1935. Appellees tendered to appellant due proofs of the death of insured but appellant refused to accept the same and gave written notice to appellees that they refused to recognize any liability under the policy.

On May 22, 1936, appellees filed their original complaint in the present action. They alleged issuance of the policy, death of the insured, due proof thereof, the names of the beneficiaries and their interests, performance of the terms and provisions of the policy, and payment of all premiums thereon. The answer denied payment of the quarter annual premium of $143.70, due October 11, 1934, and affirmatively alleged lapse and forfeiture of the policy. The answer also contained an affirmative defense alleging default in the payment of a policy loan note in the sum of $1,637.50, due and payable October 11, 1934, which except for the sum of $.09, had exhausted the surrender or loan value of the policy. The answer further contained a counterclaim by which appellant sought recovery on said policy loan note

conditioned only upon recovery by appellees on the policy.

During the course of trial appellees, with leave of the Court, amended their complaint by adding thereto allegations that the insured became totally and permanently disabled on July 1, 1934; that upon the advice of Norman, the local agent of appellant, the insured on November 6, 1934, filed with him proof of total permanent disability of the insured; that said proof was filed within the period of grace after the due date of the quarter annual premium of October 11, 1934; that November 6, 1934 said Norman suggested to Herbert Hanley, agent of the insured, that it would not be necessary to pay the full quarter annual premium, but that insured could pay one month's premium of $47.90, which was paid; that Norman further stated that the payment of said monthly premium together with the previously filed proof of disability would obviate the necessity of paying any further premiums on said policy; that but for the representations of Norman and the belief of Hanley therein, Hanley would have paid the quarterly premium on November 10, 1934; that the insurer did not advise defendant until the latter part of November, 1934, that the payment of a month's premium in lieu of a full quarterly payment was unsatisfactory; that Hanley thereupon offered to Norman to pay the full premium, but that the defendant refused to accept the same; that Hanley thereafter, monthly, offered and tendered the payment of a monthly premium of $47.90, which defendant refused to accept.

Appellant thereupon amended its answer and alleged the filing of the above referred to Municipal Court action by appellees. It was alleged that a general demurrer thereto was sustained without leave to amend, and that plaintiffs sought not to be permitted to introduce evidence showing the insured "became totally and permanently disabled at a date prior to October, 1934, for the reason that said plaintiffs are bound by the allegations contained in said complaint to the effect that said insured became totally disabled on the 4th day of October, 1934, and by the order of said Municipal Court sustaining said general demurrer without leave to amend; and said plaintiffs are estopped to introduce evidence in conflict with said order; that said order is res adjudicata as to the date when said disability began".

The trial court found, inter alia, that insured died October 13, 1935; that due proof of his death was given appellant; that the insured suffered total and permanent disability within the meaning of the policy in July, 1934 and that such disability continued to the time of his death; that due proof and notice thereof, within the meaning of the policy provisions was given appellant on November 6, 1934 and while the policy was in full force; that thereupon the appellant became obligated to pay to insured the sum of $100, and a like sum monthly thereafter; that the appellant did not pay the sum of $100 on November 6, 1934, or any monthly sums thereafter, but at all times retained the same; that prior to November 11, 1934 the appellant had on hand monies belonging to the insured in the sum of $170.34, said sum consisting of the $100 due as disability benefit, the $22.33 on account of the policy coupon available for payment of the last quarterly premium for the year 1934, the $.09 overpayment of the July 11, 1934 premium, and the $47.90 paid by the insured to appellant on November 10, 1934; that on November 11, 1934 there was payable to appellant as premium installment and as interest on the premium loan $168.26; that said sum was paid in full since it was the duty of the appellant to credit the amounts on hand belonging to insured to the payment of the same to save a forfeiture of the policy; that by reason of the disability provisions of the policy no further premiums became payable.

The court further found that the Municipal Court proceedings above referred to were not res adjudicata as to the date of commencement of insured's total permanent disability, and that appellees were not estopped from proving that insured's total permanent disability commenced in the month of July, 1934.

Appellant contends that appellees are estopped or barred by reason of the "judgment or order of the Municipal Court" from introducing evidence to prove that insured's disability occurred at a date anterior to October 4, 1934, which is the date alleged in the Municipal Court case as that on which disability began.

No question becomes res adjudicata until it is settled by final and conclusive adjudication. 2 Freeman on Judg-

ments, 2d Ed., § 717, p. 1512; Calif. C. C.P. § 1908. An order merely sustaining a demurrer but upon which no judgment is rendered is not a final and conclusive adjudication. Sivers v. Sivers, 97 Cal. 518, 32 P. 571; De La Beckwith v. Superior Court, 146 Cal. 496, 80 P. 717; see, also, Frantz v. Mollen, 204 Cal. 159, 267 P. 314; Calif.C.C.P. 664. As said in the De La Beckwith case, where it was argued that orders sustaining demurrers were res adjudicata as to a particular issue, "An order sustaining a demurrer is not a judgment, and does not have the effect of finally and irrevocably dismissing the demurring party from the action. 'It may form the basis for rendering a judgment, but is not itself a judgment' (Sivers v. Sivers, 97 Cal. 518, 32 P. 571), is not appealable, and can be reviewed by an appellate court only on appeal from a final judgment subsequently given. Upon such an order being made without leave to amend, or where it is made with leave to amend and no amendment is made, the party whose demurrer has been sustained may become entitled to a judgment which may effectually bar further proceedings against him in the matter from which he has been dismissed. In the absence of such a judgment, however, the mere order constitutes no bar. * * *" 146 Cal. at page 500, 80 P. at page 719.

■■ In the present case it does not appear that judgment was ever entered on the order sustaining the demurrer without leave to amend. If such judgment was ever made such fact was neither pleaded nor proved on the trial of this case. In consequence, in view of the principles above stated, there was no occasion for the application of the doctrine of estoppel by judgment. If it can be assumed that some effect adverse to appellees could be given to the entry of dismissal of his action by insured, it does not appear from the record before us that such dismissal was ever in fact entered. In any event, as stated by the Appellate Division of the Superior Court, if such entry had any effect it was at best "a waiver by plaintiff of a right of appeal" and was not effective as an adjudication of the case.

Appellant does not contend that the court's finding that insured became completely and totally disabled in July, 1934 is erroneous, but argues that the evidence conclusively shows that there was no proof furnished it at its home office showing that the insured was totally and permanently disabled for a period of ninety days prior to the filing of the purported proof on November 6, 1934 and that in consequence the finding that due proof and notice of permanent total disability was given while the policy was in full force is without support in the evidence. Cases are cited[1] to the effect that under such a policy provision as that existent here "due proof of disability" must be made to the company before default in the payment of any premium due, and that the same is a condition precedent to be performed by the insured in order to effect a waiver of the payment of premiums and in order to recover disability benefits even though the disability occurs prior to any default in the payment of a premium.

■ We think that the trial court's finding in this regard is supported by the evidence. The "due proof" requirement of the policy is satisfied so long as it is ample to enable the company to consider its rights and liabilities—it is not necessary that the proof must satisfy the insurer of the existence of the disability under the terms of the policy. See cases collated in Annotation, 109 A.L.R. 825. The proof of disability filed by insured, although not entirely consistent throughout its various parts, apprized defendant of the disease suffered, of insured's claim that the disability was total and permanent and that it had existed at least 90 days prior to the filing, and thus gave defendant complete notice so that it might either pay or prepare its defense when and if sued. No more was required. Wray v. Equitable Life Assur. Soc., 1935, 129 Neb. 703, 262 N.W. 833, 834; Corcoran v. Metropolitan Life Ins. Co., 1936, Mo. App., 93 S.W.2d 1027.

Another contention of appellant is that the evidence is insufficient to support the finding that the quarter annual premium due October 11, 1934 was paid. It is claimed that the finding of the court that

---

[1] Cochens v. Prudential Life Ins. Co., 4 Cal.App.2d 172, 40 P.2d 902; Morris v. New York Life Ins. Co., 6 Cal.App. 2d 30, 33, 43 P.2d 572; Bergholm v. Peoria Life Ins. Co., 284 U.S. 489, 52 S.Ct. 230, 76 L.Ed. 416; Avery v. New York Life Ins. Co., 5 Cir., 67 F.2d 442, 443; Orr v. Mutual Life Ins. Co., 8 Cir., 64 F.2d 561.

the company had on hand on November 11, 1934 $100 to which the insured was entitled as a disability benefit is erroneous. This contention is disposed of by our conclusion that the disability proof filed by insured was sufficient, for by the terms of the policy insured immediately upon the filing of the required proof became entitled to the disability benefit. It is further asserted that the sum of $47.90 was not tendered to appellant in part payment of the premium and could not be so applied, and that consequently the premium was not paid before the expiration of the period of grace.

■ The general rule is that an insurer is not justified in declaring a forfeiture of an insurance policy for the nonpayment of a premium when, at the time such premium accrues, the insurer is indebted to the assured, either for dividends declared or other funds which it may have in its hands belonging to the policy holder. 14 R.C.L., Insurance, § 138, p. 966. This rule is based on the principle that it would be inequitable for an insurance company to forfeit a policy when it holds funds belonging to the assured which are presently payable, and the rule comprehends "any excess of premiums paid, dividends, profits, benefit payments, and the like". Long v. Monarch Accident Ins. Co., 4 Cir., 30 F.2d 929, 930; Leach v. Federal Life Ins. Co., 1938, 296 Ill.App. 88, 15 N.E. 2d 1006, 1008; Timmerman v. Bankers Reserve Life Co., 1933, 122 Tex. 603, 63 S.W.2d 687; Couch, Cyclopedia of Insurance Law (1929) § 616, p. 1979. The rule has been applied to prevent policy forfeiture where disability payments were due and payable to the assured. Ruderman v. Massachusetts Accident Co., 1936, 120 N.J.Eq. 251, 184 A. 520; Missouri State Life Ins. Co. v. Le Fevre, 1928, Tex.Civ. App., 10 S.W.2d 267, 270. A California court has inferentially given its approval to the rule as thus applied. Morris v. New York Life Ins. Co., 6 Cal.App.2d 30, 33, 43 P.2d 572. The language to be found in Straube v. Pacific Mutual Life Ins. Co., 123 Cal. 677, 56 P. 546 to the effect that the insurer was not required to apply accumulated dividends to save forfeiture of the policy must be understood as limited to the facts of that case, (see, Annotation, 6 A.L.R. 1400, 1401). rather than as an indication that the California courts would, were the question squarely presented, take a position opposite to that of the overwhelming weight of authority on the point.

■ We have found no case exactly like the present in the respect that a portion of the monies in the hands of the insurer and necessary to be applied to save forfeiture of the policy were paid by the insured under a misapprehension as to the amount necessary to keep the policy alive and under the assumption that the amount paid would satisfy in full the premium requirement for a shorter period than that fixed by the policy. Appellant contends that it was under no duty to apply this sum to payment of the required premium because "such a duty would create an extraordinary situation, whereby the insurance carrier would be bound to ignore the instructions of the insured, and apply the sum to a purpose diametrically in conflict with the instructions of the insured". In support of this statement is cited Penn Mutual Life Ins. Co. v. Ashton, 10 Cir., 93 F.2d 565, 566, wherein the court stated the general rule that sums due insured are to be applied to the premium and added, "Upon the failure of the company to act, and in the absence of other direction by insured, the law intervened and made the application. Lamar v. Ætna Life Ins. Co., 10 Cir., 85 F.2d 141."

We are unable to see wherein the quoted language supports appellant's contention. It is clear in any case that if the assured affirmatively directs the insurer to dispose of monies belonging to him and held by the insurer in a manner other than by application on the premium the company would be obligated to follow such direction. But in the present case we have no such situation. In this case the money was paid over as full payment of a premium thought to be less than that properly due. It could not be applied as directed and so was returnable to the insured. The insured never made "any other direction" for the disposal of these funds, nor could he have done so for he was not aware that they had not been applied as directed. In this circumstance it was the duty of the insurer to apply them to prevent forfeiture. As said in Lamar v. Ætna Life Ins. Co., 10 Cir., 85 F.2d 141, 142, the insurer should apply funds due to the insured "in extinguishment of the premium and thus avoid lapse of the policy unless the insured directs otherwise. And the law will make the application if the insurer fails to act, the

695

consent of the insured thereto being presumed". See, also, Pfeiffer v. Missouri State Life Ins. Co., 174 Ark. 783, 297 S. W. 847, 54 A.L.R. 600, 605. We think it does no violence to the facts in the present case to presume insured's consent to the application of the payment to keep the policy alive, where such was the intention of the insured in making the payment though the payment was made under a mistaken idea as to the amount necessary for such purpose.

Appellant urges as error the granting by the court of leave to file the second amended complaint. Appellant suffered no prejudice because of such action. The amendment was not necessary to plaintiff's case. Moreover, appellant made no motion for continuance or other relief. We think the allowance of the amendment was a proper exercise of the court's discretion. Calif. C.C.P. § 473.

In the view we have taken of the case it is unnecessary to consider other assignments of error urged by appellant.

Judgment affirmed.