## MORRELL v. UNITED STATES.
### Civ. No. 5666.

United States District Court
D. Maryland.

Aug. 19, 1952.

Herbert E. Witz, of Baltimore, Md., for plaintiff.

J. Bernard J. Flynn, U. S. Atty., and C. Ross McKenrick, Asst. U. S. Atty., Baltimore, Md., for defendant.

WILLIAM C. COLEMAN, Chief Judge.

This is a suit brought under the National Service Life Insurance Act of 1940, 38 U.S.C.A. §§ 801–818, to recover the proceeds of a National Service Life Insurance policy, in which the plaintiff, the widow of Raymond C. Morrell (hereinafter referred to as the insured), is named beneficiary, and their minor son, Raymond C. Morrell Jr., contingent beneficiary. The policy was issued by the Veterans' Administration on September 1, 1944, in the amount of $10,000.

The material facts in the case are found to be as follows: The insured died on May 16, 1947. Shortly thereafter, in July 1947, the plaintiff, widow of the insured, filed her claim with the Veterans' Administration for payment of the proceeds of this policy. After a hearing, on November 29, 1951, the Appeal Board of the Veterans' Administration found that the insured had been totally disabled from October 2, 1945, to January 17, 1947, and was for this reason entitled to waiver of premiums on the policy from November 1, 1945 to February 1, 1947. The insured, however, had never asked for any waiver of premiums. The Board further found that the insured had paid premiums on the policy from the date of its issuance to and through May 31, 1946, which accounted for about eight months of the period of total disability when premiums were not legally due and chargeable to the insured. These premiums had been credited to his account, but never refunded. The Government now holds itself ready and willing to make the refund, but denies that plaintiff has the right to require that these refundable premiums be set off against other premiums due and unpaid by plaintiff, and non-refundable, and thereby prevent lapse or forfeiture of the insurance. Credit in the hands of the Government is much more than sufficient to pay the premiums claimed to be due.

The insured's total disability is admitted by the Veterans' Administration to have

commenced when he was first hospitalized by the Army on October 2, 1945, for a chronic arthritic condition with complications, aggravated by a fall in 1935 while on active duty. While released on October 25, 1945, hospitalization continued off and on for varying periods, due to the same type of disability. While on terminal leave April 29, 1946, the insured was admitted to the Regional Hospital at Fort George G. Meade, Maryland, where he remained until July 1, 1946, except for a period of leave from May 24 to June 3, 1946, when he resumed terminal leave and was to report to an inactive status on July 14, 1946. However, on July 9, 1946, he was readmitted to this hospital and remained there until September 19, 1946 when he again resumed terminal leave and finally reverted to an inactive status on October 1, 1946. On December 28, 1946, the insured, then a major, executed an application for extended active duty for an unlimited period, and on January 17, 1947, he was restored to active duty and served at Fort Monmouth, New Jersey, until his death on May 16, 1947, which occurred suddenly due to heart failure, the result of arteriosclerosis with occlusion. The Board determined that the insured was able and fit for active duty from January 17, 1947, to May 16, 1947.

That the Government admits total disability of the insured from October 2, 1945, through January, 1947, and that therefore premiums paid for this period are waived and refundable, while at the same time claiming that the insured was prior to February 1, 1947, that is, as early as December 28, 1946, not totally disabled, is explained by the fact that the premium paid for the month of December, 1946, carried through the month of January, 1947. Vouchers executed by the insured in 1946 and 1947 indicate that he authorized the discontinuance of allotment deduction to cover premium payment effective April 30, 1946, and in 1947 made no authorization of allotment for premium payments.

The aforegoing facts were found by the Appeal Board and appear to be fully substantiated by the documents and correspondence attached to the pleadings. On this evidence the Board found (1) that this veteran's insurance contract was not in force at the time of his death, there being no basis for the application of refundable premiums to the payment of premiums which became due February 1, 1947, and thereafter; and (2) that there was no proof establishing that the insured was continuously totally disabled from October 2, 1945 to the date of his death.

The following additional facts not alluded to in the Appeal Board's decision relating to the marital status of the insured and his widow, the present plaintiff, also appear from a stipulation filed in the case by counsel for both parties: On March 29, 1946, the insured obtained a divorce in the Hustings Court, Richmond, Virginia, on grounds of desertion. On May 25, 1946, he married Mary Swann in South Carolina. The insured having died on May 16, 1947, a year later, i. e. on May 21, 1947, Mary Swann applied to the Veterans' Administration for insurance benefits as the widow of the deceased veteran. Her application was rejected on June 2, 1947 on the ground that Elizabeth C. Morrell, the plaintiff, was the named principal beneficiary in the policy. The plaintiff subsequently filed a petition in the Circuit Court of Baltimore City for annulment of the divorce decree which the insured had obtained in Richmond, Virginia, and on July 5, 1949, that Court declared the Virginia decree void on grounds of fraud by the insured practised (1) upon the plaintiff in that she had never deserted him, and (2) upon the court, in that the insured had not been a bona fide resident of Virginia for the period of time requisite to obtaining a divorce in that State. By virtue of this Baltimore decree, the marriage of the insured to Mary Swann was held void, and plaintiff was declared to be the lawful widow of the insured. No appeal from this decision was taken.

The question thus presented for decision is this: Was the Veterans' Administration obligated, as the plaintiff contends, to set off refundable premiums, admittedly due the insured for the period from October 2, 1945 to February 1, 1947, because of his total disability, against other premiums it

660

claims to be due by insured and not refundable, so as to prevent lapse or forfeiture of the insurance?

Section 802(n) of Title 38 U.S.C.A. of the National Service Life Insurance Act of 1940, provides: *"Any premiums paid for months during which waiver is effective shall be refunded. * * * In the event that it is found that an insured is no longer totally disabled, the waiver of premiums shall cease as of the date of such finding and the policy of insurance may be continued by payment of premiums as provided in said policy: Provided further, That in any case in which the Administrator finds that the insured's failure to make timely application for waiver of premiums or his failure to submit satisfactory evidence of the existence or continuance of total disability was due to circumstances beyond his control, the Administrator may grant waiver or continuance of waiver of premiums: And provided further, That in the event of death of the insured without filing application for waiver, the beneficiary, within one year after the death of the insured or August 1, 1946, whichever be the later, or, if the beneficiary be insane or a minor, within one year after removal of such legal disability, may file application for waiver with evidence of the insured's right to waiver under this section. * *"* (Emphasis supplied.)

The position taken by the Veterans' Administration is that this Section 802(n) prohibits withholding the refundable premiums and applying the amount thereof to the payment of premiums for a period subsequent to the expiration of a waiver, when, as in this case, the insured never gave any direction to that effect, but on the contrary, as is claimed, evinced a definite purpose to discontinue the insurance and never provided in any manner for the payment of premiums falling due from June 1, 1946. The Government's denial of liability in this case is accordingly based upon the ground that no insurance was in effect at the time of the veteran's death, it having been expressly discontinued by the veteran as of April 30, 1946, By his direction no allotment for insurance was deducted from his pay beyond that date. This deduction for April 1, 1946, provided for payment of his insurance premiums through May 31, 1946. There is no record of remittance being received subsequently to cover any premium payment. The veteran's intention to discontinue his insurance is further confirmed, the Government contends, by his next succeeding pay voucher, dated July 6, 1946, which made no provision for insurance premium allotment.

█ Plaintiff's position, on the other hand, is that the same principle applicable to private insurance companies is applicable to the Government, which is that an insurer may not declare a forfeiture of an insurance policy for the nonpayment of a premium when, at the time such premium accrues, the insurer is indebted to the insured, either for dividends declared or for other funds which it may have in its hands belonging to the policy holder, this rule being based on the principle that it would be inequitable to forfeit a policy when funds are held belonging to the assured which are presently payable. See Long v. Monarch Accident Insurance Co., 4 Cir., 30 F.2d 929, and cases therein cited.

Plaintiff is supported in her contention by the unreported decision in Marie F. Levitch v. United States, filed January 30, 1948, by the District Court for the District of Columbia, and not appealed by the Government. The facts in that case are similar to those before us. A $10,000 policy of National Service Life Insurance was granted the insured during his military service. For four months after he was separated from service he continued paying premiums on the policy. Then, for approximately nineteen months until the date of his death, no premiums were paid. After his death, his mother, the beneficiary under the policy, filed a claim for death benefits, alleging that he was continuously disabled from the date of his separation from service to the date of his death, and that, therefore, the premiums due for that period should be waived, and applied to the policy so as to keep it in full force and effect. The Veterans' Administration decided, however, that while the insured had been continuously totally disabled for the major portion of that period, during approximately nine

months of that period he had not been so disabled. The mother's claim was therefore denied by the Veterans' Administration, on the ground that the policy was in a state of lapse at the time of insured's death, since the premiums for the nine month interval had not been paid. It was further found that insured had paid eight monthly premiums during the disability period and that they had never been refunded.

Upon these facts the District Court reversed the ruling of the Veterans' Administration, and held that the eight unrefunded monthly premiums should have been applied by the Government to the payment of the premiums which fell due in the nine month period, so as to avoid a forfeiture of the policy. When so applied, the policy did not lapse, but was in force by reason of the aforegoing application, plus the grace period provided by Veterans' Administration Regulations and a short period of approximately three weeks prior to insured's death, when the Veterans' Administration determined that he had again become totally disabled. In its opinion, the Court said:

"The Court holds that the government was under an obligation to do one of two things, either make the refund or else apply the money in its hands to the premium on the policy. It could not just hold the money and make no application of it in the absence of any instructions to that effect. Even if the government did not wish to apply the money it should have tendered a refund. It seems to the Court that the government is under an obligation to the same extent to which a private insurance company would be under similar circumstances, otherwise government insurance would be of doubtful value.

"The Court feels that not merely as a matter of law, but also as a matter of equity, since the government has money in its hands belonging to the insured, it was under a duty to apply that money as against any obligation due the government from the insured, in this case the premium."

Strangely enough, there is a paucity of decisions dealing with the precise question here in issue. Counsel for plaintiff also relies upon Mikell v. United States, 64 F.2d 301, a decision of the Court of Appeals for this, the Fourth Circuit. There, the question was whether money due insured by the Government for difference in pay on account of promotion of insured, was applicable to payment of premiums on insured's converted war risk insurance policies, so as to extend the life of the policies beyond insured's death, under the World War Veterans' Act of 1924, as amended, 38 U.S.C.A. § 421 et seq. While clearly the facts in this case are different from those before us, the following part of Judge Parker's opinion in that case is favorable to plaintiff's present contention, even though it be treated as dictum, 64 F.2d 302: *"The rule that a private insurance company which has moneys payable to an insured should apply same towards the payment of a premium, to avoid a forfeiture of a policy* (See Long v. Monarch Accident Ins. Co., 4 Cir., 30 F.2d 929), *has no application to the government, except possibly with respect to moneys due under policies of insurance. The rule as it relates to private companies is based upon the duty of such companies to use funds belonging to the insured to prevent a forfeiture of his rights under the insurance contract.* See Pfeiffer v. Missouri State Life Ins. Co., 174 Ark. 783, 297 S.W. 847, 54 A.L.R. 600. Moneys due by the government, however, can be paid out or applied only in accordance with the provisions of law; and there is no duty or power on the part of public officials to apply them otherwise. *When the government goes into the business of insurance, it is permissible to apply to it the rules applicable to insurance companies so far as transactions relating to insurance are concerned, but no farther; and an insured who defaults in the payment of premiums on a government policy is not entitled to have his insurance continued in force merely because in some of its various activities, not connected with insurance, the government is indebted to him.* Such indebtedness might arise in many ways, as for salaries due civil employees, for tax refunds, for claims, etc.; and the officer charged with making payments to the person entitled would not be justified in mak-

ing them to the War Risk Insurance Bureau without specific direction to that effect. If he should make them without such direction, he would be answerable under his bond for doing so. There is no basis, therefore, for the presumption as to the application of moneys which prevails in the case of private insurance companies." (Emphasis supplied.)

Again in Kontovich v. United States, 99 F.2d 661, a decision of the Court of Appeals for the Sixth Circuit, the following statement of the Court clearly supports the position taken by the plaintiff beneficiary in the present case, even though the question before the Court in the Kontovich case was entirely different, namely, what was the proper meaning to be given to the term "total disability" as used in the World War Veterans' Act of 1924. The Court said, 99 F.2d at page 664: "The War Risk Insurance Act was intended to afford the soldier the advantages of ordinary life and accident insurance, which were no longer reasonably available to him and being substitute insurance, such Government contracts are to be construed by the same rules as like contracts involving private parties and the jurisdiction conferred on the courts to adjudicate such contracts must be exercised in accordance with the laws governing the usual procedure of the courts in actions for money compensation. Law v. United States, 266 U.S. 494, 496, 45 Ct. 175, 176, 69 L.Ed. 401."

Another unreported decision, cited by counsel for the Government, is a memorandum opinion of the District Court for the Northern District of Indiana, South Bend Division, in the case of Rose Shaw v. United States. This case appears to involve facts different from those before us, with the Court basing its decision on words printed at the bottom of Veterans' Administration Form 1492, entitled "Statement of Disposition of Unearned Premiums Due to Waiver," on which the insured had reported that he was continuously totally disabled. These printed words were: "Unless otherwise instructed the Veterans' Administration will refund unearned premiums as soon as the allotment information is supplied." The Court concluded that in the absence of a contrary instruction from the decedent after this notification on Form 1492, the Government had neither the right nor the duty to apply the unearned premium credit to the payment of any premiums, even though the premium credits which were never refunded, were sufficient, had they been so applied, to keep the entire $10,000 of insurance in force until the death of the insured. In a letter accompanying this form, the decedent stated: "I wish to continue $2,000 of my insurance. Could you please give me rate of premiums and how this should be paid. For five year term."

It was the position of the Government that this letter constituted a direction to apply the unearned premium credit to the payment of premiums on the $2,000 policy, and that accordingly the remaining policies had lapsed prior to the death of the decedent. This case was never appealed. On the other hand, the plaintiff beneficiary in the Shaw case contended that this letter constituted a mere request for information, and did not direct the Veterans' Administration to make any disposition of the funds. In the present case there is no evidence that the insured was ever sent, or ever used any form such as the one in the Shaw case.

In support of its position the Government also relies upon three decisions of the Administrator of Veterans' Affairs (Veterans' Administration).

Under the first of these, No. 745, dated May 20, 1947, it was held that a credit from waived premiums could not be applied to continue insurance in force, in the absence of direction by the insured to that effect, but must be refunded to the insured if living, or to his estate.

In the second decision referred to, No. 794, dated October 4, 1948, a similar result was reached on a finding that the insured had manifested an understanding or desire that the refundable premiums be paid to him in cash.

Under the third decision, No. 902, dated April 15, 1952, the question was whether an insured's premium credit on one insurance contract could be used to prevent the lapse of his insurance under another contract. It was held that a premium credit

item to the account of an insured on the date of lapse of insurance, sufficient in amount to prevent lapse, could be so used, even though the credit resulted in connection with another insurance contract, unless the insured had directed that the credit was to be used for another purpose. It was held that such direction may be found in the provisions of the insurance contract, either expressed or implied, in a communication by the insured to the Veterans' Administration, or in any manner in which the intention of the insured is manifested. The Administrator, applying this principle to two cases set forth in his decision, held that the insurance was payable in each case.

In the Administrator's decision No. 794 above, the decision in the Levitch case which was rendered subsequent to the Administrator's decision No. 745, was reviewed and it was concluded by the Administrator that this decision called for no change in the policy with respect to the question here in issue which the Veterans' Administration had consistently adhered to. It was pointed out in decision No. 794 that there was a difference between the facts in the Levitch case and those reviewed in decision No. 794 and also No. 745, namely, that the only application for waiver in the Levitch case was made by the beneficiary after the death of the insured, whereas in both situations involved in the Administrator's decisions, the application for waiver was executed by the insured. In other words, in the Levitch case, the insured did not give any indication whatsoever as to what disposition he desired of refundable premiums, whereas in the other cases, the insured had manifested both his understanding that any refundable premiums would be paid to him in cash and his desire that such be done.

In these decisions of the Administrator, the need for a uniform policy with respect to the disposition of refundable premiums after the death of an insured is particularly stressed. Reliance is placed upon the fact that refundable premiums upon lapsed contracts of insurance have uniformly been regarded by the Veterans' Administration as assets of the estate of the insured, and not as belonging to the beneficiary or as being subject to the latter's disposition. It is asserted that the National Service Life Insurance Fund, since it is administered by the Veterans' Administration for the mutual benefit of all policy-holders, should not be "imposed upon" by having refundable premiums apply to the continuance of insurance only in those cases in which such application would result in the disbursement of much larger sums represented by contract liabilities. It is pointed out that there is nothing in the brief opinion of the Court in the Levitch case, nor in its findings of fact and conclusions of law which indicates whether refundable premiums should receive a like application in those situations in which there would be no liability for any disbursement under the contract of insurance. In the last analysis the Administrator rejects the proposal that the general rule in commercial insurance be made applicable to Government insurance because of the provision in Section 802(n) of the statute that "Any premiums paid for months during which waiver is effective shall be refunded."

The Government's position is thus clearly summarized in the following statements contained in the Administrator's decision No. 745: "This [Section 802(n)] must be accepted as a part of the agreement which the parties made, and, in the absence, it would seem, of some contrary direction by the insured, it required the Government to return the premiums, not to apply them to other purposes. To construe this provision as one compelling the use of funds, without the consent of the insured, for the purpose of continuing insurance would be, in effect, to provide compulsory insurance when the insured might not desire it. Certainly this would be so if it compels the application of the funds to the discharge of subsequent premiums when such funds are insufficient in amount to maintain the insurance in force until the date of the insured's death. If such application is to be compelled only after it has been determined, following the death of the insured, that it would be to the beneficiary's advantage for them to be so applied, a determination so to do could never be made until after an alleged loss had occurred, and it would be necessary to

664

defer the refund until either the insured died or sufficient time had elapsed to exhaust the funds. There is nothing in the statute which could be construed as directing the diversion or application of the funds in the one case and prohibiting it in the other."

■ It is conceded that this reasoning of the administrator is prima facie somewhat persuasive. However, as the Administrator admits in his decisions which we have above analyzed, the intention of the insured not to let his insurance lapse need not be *expressly* manifested but may be *implied* in a variety of ways. In the case now before us, the plaintiff beneficiary was the insured's lawful wife. No question is presented as to any change in the named beneficiary or contingent beneficiary, his son. There is nothing but speculation which indicates that the insured desired that any one except the plaintiff, if she survived him, should have the benefit of the insurance which he had been carrying for her. It may be argued that after he tried, but was legally unsuccessful, to divorce his wife and to marry another woman, he did nothing respecting his insurance entirely because of over-sight, or because he thought that by his discontinuance of premiums after his April, 1946, payment, the insurance had completely lapsed before his re-marriage the following month. However, such speculation we believe is outweighed by the fact that the plaintiff remained his one and only lawful wife until his death, and by the fact that she also remained the designated beneficiary of his insurance until his death. Thus, in a situation of this kind we believe that the argument for uniformity is outweighed by the obvious equitable and just considerations involved in the present case. To deny the present beneficiary the proceeds of the policy would be, we believe, straining a technicality to an unjustifiable length. If such denial is upheld, the plaintiff beneficiary may receive nothing. The accumulated waived premiums will not be paid to her but to her husband's estate, and will be subject to his debts and estate expenses.

These considerations, we believe, are the same which motivated the Court to reject the view of the Administrator in the Levitch case. But more persuasive than this, even if not actually requiring this Court to rule as it is now doing, is the language used by Judge Parker in his opinion in the Mikell case which we have heretofore quoted, the gist of which is contained in the following sentence, which we re-quote, 64 F.2d 301, at page 302: "When the government goes into the business of insurance, it is permissible to apply to it the rules applicable to insurance companies so far as transactions relating to insurance are concerned, but no farther; * * *." Therefore, unless and until the Court of Appeals for this Circuit rules that, in relation to a state of facts such as are now before us, this statement in the Court's opinion in the Mikell case is *not to be considered as controlling,* we feel required, especially in view of the obvious equities in favor of the beneficiary in the present case, to rule in her favor, which we accordingly do.